Opinion
 

 ELKINGTON, J.
 

 —National American Insurance Company (hereafter National) and Guy Kevin Peny commenced an action for declaratory relief against Insurance Company of North America (hereafter INA) and others, in which action several other insurance companies were later joined. INA has appealed from the judgment which was thereinafter entered. We have concluded that the appeal is without merit. Our several reasons follow.
 

 The facts of the case are without controversy. Four teenage boys, Perry, Bacharach, Seymour and Stalun, decided to enter upon “an ‘egging expedition,’ i.e., throwing eggs at residences” and other targets that presented themselves. To accomplish their purpose they bought some eggs and occupied an automobile permissibly driven by Bacharach. They “egged” various homes and vehicles and persons, from vantage points within and without the automobile. In the course of the escapade and from the vehicle, Perry “flipped” an egg at a pedestrian, one Nelson. The car, and thus the egg, were traveling at a speed of about 40 miles per hour at the time. Nelson was struck in an eye causing loss of sight of that organ. He thereafter commenced an action for damages against the four boys.
 

 INA had written a policy of automobile liability insurance with limits of $300,000 on the automobile driven by Bacharach, and each of the four boys was an insured thereunder. By its policy INA promised to pay on behalf of its insured “all sums which the insured shall become legally obligated to pay as damages because of. . . bodily injury . . . caused by an occurrence [which “means an accident”] and arising out of the ... use ... of any automobile,...”
 

 Perry was also an insured under a homeowner’s liability policy with $100,000 limits written by National. The other boys were covered by insurance policies with companies other than INA and National.
 

 
 *570
 
 INA disclaimed any liability in relation to Nelson’s injuries on the theory that the injuries, and hence the liability therefor, did not arise out of the
 
 use
 
 of the insured automobile. For that reason it also rejected the defense of the Nelson action tendered by each of the boys. Periy was defended in the action by National, and the others by their respective insurance carriers.
 

 In Nelson’s action the case was given the jury on the issue of negligence. On that theory they returned a verdict against Perry in Nelson’s favor for $105,500, but found in favor of the other boys.
 

 In the instant declaratory relief action the several insurance companiés of the case sought adjudication of their respective rights and obligations in respect of the Nelson action and judgment, and the occurrence upon which they were founded. The right of Nelson to payment of his judgment was unaffected by the action; it was paid in some manner by the parties, under a stipulation that an adjustment would later be reached in accordance with the final judgment of the declaratory relief action.
 

 In the declaratory relief action the superior court took judicial notice that the judgment in the Nelson action was based upon negligence and found, in effect, that Perry’s liability thereon arose “out of [his] use” of the automobile driven by Bacharach and insured by INA. The court thereupon entered its judgment declaring that INA was liable for the entire Nelson judgment, as well as for reimbursement to the other insurance carriers for their reasonable expenses in presenting defenses for their, and INA’s, insureds. INA’s instant appeal is from that judgment.
 

 I. INA contends that its automobile liability insurance policy extended no coverage to any of the participants in the occurrence at issue.
 

 The policy’s “Coverage C,” as relevant, provided: “The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of. . . bodily injury ... to which this insurance applies, caused by an occurrence and
 
 arising out of the .
 
 . .
 
 use ... of any automobile,
 
 and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the
 
 *571
 
 allegations of the suit are groundless, false or fraudulent, . . .” (Italics added.)
 

 INA argues that, as a matter of law. Nelson’s injury did not arise
 
 out of the use
 
 of the automobile driven by Bacharach.
 

 It is now established in California that the language of a
 
 coverage clause
 
 such as is found in INA’s policy, i.e., “arising out of the . . . use
 
 ... of
 
 any automobile,” has “broad and comprehensive application, and affords coverage for injuries bearing almost
 
 any
 
 causal relation with the vehicle.”
 
 (State Farm Mut. Auto. Ins. Co.
 
 v.
 
 Partridge,
 
 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].) Such “ ‘use’ ” need not amount to a “ ‘proximate cause’ ” of an accident for coverage to follow: only some “minimal causal connection between the vehicle and an accident” is required.
 
 (Id.,
 
 p. 100. fn. 7.)
 

 We look to the uncontroverted evidence, in determining whether there was some “minimal, causal connection” between the vehicle occupied by the four boys, and the occurrence resulting in Nelson’s injury.
 

 Bacharach testified that he and his companions would probably not have gone “egging” without the vehicle. He said. “I don’t think we could have covered as much ground as we did without a . . . vehicle.” And Perry had discussed with the others the use of an automobile to transport themselves while “egging”: in deciding to flip the egg at Nelson, factors considered by him were that he was “in a traveling motor vehicle.” and that the vehicle was a means of a “quick escape” after the egg was thrown. And most significant is the obvious inference that the principal cause of Nelson’s grievous injury, in addition to such forward motion as was caused by the “flipping” of the egg, was the approximately 40-mile-per-hour speed initially imparted to it by the automobile’s forward motion.
 

 The trial court found, among other things, that the liability incurred by Perry resulted from his “negligent conduct” and an “accident,” that at least in part it resulted from “auto related” conduct, and that the “act of Perry in flipping the egg from the moving vehicle, which struck Nelson, was a use of said vehicle.” These findings, we opine, were supported by substantial evidence. (See
 
 Green Trees Enterprises, Inc.
 
 v.
 
 Palm Springs Alpine Estates, Inc.,
 
 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d
 
 *572
 
 805].) It follows that the requisite “minimal causal connection” between the vehicle and the accident was established in the superior court.
 

 We have considered the many out-of-state authorities relied upon by the parties, and relating to liability under similar automobile insurance policy “coverage clauses” for injuries from objects thrown from moving vehicles. While there is unquestionably a diversity of judicial opinion, a common thread of reason will be discerned. Such a throwing, the cases appear to hold, is not
 
 necessarily
 
 the use of an automobile; it may or may not be, according to circumstances. Where there is found a sufficient causal relationship between the throwing and consequent injury, and the ordinary use for which the vehicle was intended, such a liability will attach. But where
 
 no
 
 sufficient causal relationship appears there will be no liability. Applications of this rationale seem appropriate. In
 
 Valdes
 
 v.
 
 Smalley
 
 (Fla.App.) 303 So.2d 342, following a fight between teenage groups one of them, while using an automobile in looking for reinforcements, was pelted with rocks by the other. While the vehicle was traveling at the rate of about 40 miles per hour one of its occupants threw a beer mug at an adversary, killing him. Finding, among other things, that “driving the auto at a high rate of speed ... no doubt greatly contributed to the velocity of the mug,” the court concluded that “the accident originated from and was causally connected with the use of the automobile,” and that an automobile insurance policy’s coverage clause applied. An opposite result was reached in
 
 Government Employees Insurance Company
 
 v.
 
 Melton,
 
 357 F.Supp. 416 (affd., 473 F.2d 909), where in the otherwise proper use of a motor vehicle one of its occupants, in order to dispose of an empty soft drink bottle, tossed it from the car inadvertently causing injury to another. Relying upon authority holding that the basis of “ ‘decision was the presence or absence of a
 
 proximate causal connection
 
 between the injury and the operation or use of the motor vehicle in question,’ ” the court concluded that such “causal relation between the use of the vehicle and the incident in question simply does not exist.” It was accordingly held that the injury did not arise out of the use of the automobile, for the purpose of the coverage clause of an automobile policy. Since California, in such a situation does not require “ ‘proximate cause,’ ” but only some “minimal causal connection” (see
 
 State Farm Mut. Auto. Ins. Co.
 
 v.
 
 Partridge, supra,
 
 10 Cal.3d 94, 100, fn. 7), it will be seen that the line of authority exemplified by
 
 Government Employees Insurance Company
 
 v.
 
 Melton, supra,
 
 is inapposite to our problem.
 

 
 *573
 
 II. Our next inquiry is whether the homeowner’s policy issued by National also afforded coverage to Periy.
 

 National’s policy, as relevant at this point, provided:
 

 “Coverage E—Personal Liability
 

 “This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence.”
 

 But then the policy, under the heading “Exclusions,” stated: “This Policy Does Not Apply: 1. Under Coverage E—Personal Liability . . .: a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: ... (2) any motor vehicle owned or operated by, or rented or loaned to any Insured; . . .”
 

 National contends that the latter provision is an exclusionary clause operating to exonerate it from any liability under its policy for the occurrence at issue. The contention is patently unsound, for the clause operated to exclude coverage only when the offending motor vehicle is “owned or operated by, or rented or loaned to any Insured,” as such “Insured” is elsewhere defined by the homeowner’s policy. Periy was such an insured, but he did not own or operate, or rent or borrow, the vehicle used by him and from which the egg was thrown.
 

 Apparently recognizing the frailty of that argument National makes an alternative contention. It argues, in effect, that assuming arguendo the inapplicability of the exclusionary clause, such coverage as was afforded to Perry by its “Coverage E” was nevertheless “excess insurance over any other valid and collectible insurance available to the Insured.” And since INA’s “primary” coverage of $300,000 limits was not, or will not be, exhausted by payment of the Nelson judgment, National insists that the trial court properly adjudicated no liability on its part in the declaratoiy relief action.
 

 On this contention National relies upon this provision of INA’s automobile insurance policy:
 
 “The insurance afforded by this policy is primary insurance,
 
 except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and
 
 *574
 
 the Insured hás other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company’s liability under this policy shall not be reduced by the existence of such other insurance.” (Italics added.) We find no exception in the policy that its insurance will apply “in excess of or contingent upon the absence of other insurance.” The plain meaning of this clause therefore is that the “insurance afforded by this policy is primary insurance. . . .”
 

 We consider now a provision of the homeowner’s policy of National. Under the heading “Apportionment,” it states; “With respect to bodily injury . . . arising out of the ownership, maintenance, operation, use. loading or unloading of any motor vehicle ... to which this policy applies, the insurance under Coverage E—Personal Liability, shall be excess insurance over any other valid and collectible insurance available to the Insured.”
 

 It thus appears that the coverage afforded Perry under INA’s policy was “primary.” and that National’s coverage was “excess insurance over any other valid and collectible insurance available to the Insured.”
 

 It is the general rule that courts will give heed to “primary” and “excess” insurance provisions of insurance policies. This rule is particularly applicable where the dispute, is between two or more insurance carriers and, as here, the rights of policyholders or their accident victims will be unaffected by its application. (See
 
 Pacific Employers Ins. Co.
 
 v.
 
 Maryland Casualty Co.,
 
 65 Cal.2d 318, 329 [54 Cal.Rptr. 385, 419 P.2d 641]; see also
 
 American Automobile Ins. Co.
 
 v.
 
 Republic Indemnity Co.,
 
 52 Cal.2d 507, 512 [341 P.2d 675];
 
 Firemen’s Fund etc. Ins. Companies
 
 v.
 
 State Farm etc. Ins. Co.,
 
 273 Cal.App.2d 445, 450 [78 Cal.Rptr. 38];
 
 Ohio Farmers Indem. Co.
 
 v.
 
 Interinsurance Exchange,
 
 266 Cal.App.2d 772,
 
 777
 
 [72 Cal.Rptr. 269];
 
 Uber
 
 v.
 
 Ohio Casualty Ins. Co.,
 
 247 Cal.App.2d 611, 618-619 [55 Cal.Rptr. 720].)
 

 We observe also the applicability of Insurance Code sections 11580.8 and 11580.9.
 

 Section 11580.8 provides: “The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among injured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary,
 
 *575
 
 excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle. [¶] The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the order in which two or more of such liability insurance policies covering the same loss shall apply,...”
 

 And section 11580.9, subdivision (d), as relevant, states: “[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.” We note that the automobile of this case was “described or rated as an owned automobile” in INA’s policy.
 

 The parties place some reliance upon the recent case of
 
 State Farm Mut. Auto. Ins. Co.
 
 v.
 
 Partridge, supra,
 
 10 Cal.3d 94. an authority which we find irrelevant to the issue before us. There an automobile liability insurance policy with coverage of $15,000, and a homeowner’s policy of $25,000 coverage limits, with Partridge as the named insured, had been written by the same company. State Farm. The policies were similar to those of the case at bench. A firearm which had been negligently equipped by Partridge with a “hair trigger,” fired as a result of his negligent driving of the insured vehicle, causing injury to the spinal cord, and paralysis, of a passenger. State Farm conceded liability on its automobile policy, but denied any coverage by its homeowner’s policy. The high court found the accident to have resulted from the nonautomobile-related negligent fashioning of the “hair trigger.” and the negligent driving of the automobile. It concluded that since Partridge’s earlier negligence existed “independently of any ‘use’ of his car. we believe the homeowner’s policy covers that liability.” (10 Cal.3d. p. 103.)
 

 It will be seen that the factual context of
 
 Partridge
 
 differs greatly from that of the case at bench. State Farm was the only insurance carrier of that case and there was no issue concerning the respective rights of “primary” and “excess” insurance carriers. In
 
 Partridge,
 
 the welfare and interest of the insured and the victim of his negligence being at stake, the court applied the strict rule that the language of both policies “
 
 ‘will be
 
 
 *576
 

 understood in its most inclusive sense, for the benefit of the insured’ ”
 
 (see
 
 State Farm Mut. Auto. Ins. Co.
 
 v.
 
 Johnston,
 
 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357]); here the dispute being between insurance companies only, that rule has no reasonable application. And finally, we observe no purpose in
 
 Partridge
 
 to disapprove, or reject, the long-settled rule that, at least where the interests of an insured or his negligently injured victim are not at stake, and “the policies expressly provide for what shall be primary and excess coverages, those provisions should be given effect.”
 
 (Pacific Employers Ins. Co.
 
 v.
 
 Maryland Casualty Co., supra,
 
 65 Cal.2d 318, 329.)
 

 III. As we have pointed out
 
 supra,
 
 INA’s policy required it on behalf of its four insureds, Bacharach, Perry, Seymour and Stalun, to “defend any suit” against them “seeking damages on account of . . . bodily injury” caused “by an occurrence and arising out of the . . . use ... of any automobile.” INA, which was a primary carrier for all of the insureds, declined to defend any of them, and each was represented by another, and secondary, insurance carrier of the case. The declaratory judgment awarded each of these carriers the amounts expended on the defense of its insured.
 

 INA makes no contention that the amounts of these awards were unreasonable; it simply insists that as a matter of law it was not liable for the defense costs incurred by the defending insurance companies.
 

 It has often been held in a situation such as that before us, not only that the insurance carrier whose obligation is primary “must bear the entire loss to the extent of the limits of the policy”
 
 (American Automobile Ins. Co.
 
 v.
 
 Republic Indemnity Co., supra,
 
 52 Cal.2d 507, 513). but it is also “liable to pay all costs of defense including attorney fees”
 
 (Universal Underwriters Ins. Co.
 
 v.
 
 Aetna Ins. Co.,
 
 249 Cal.App.2d 144, 152 [57 Cal.Rptr. 240]; and see
 
 Pacific Indem. Co.
 
 v.
 
 Truck Ins. Exch., 269
 
 Cal.App.2d 420 [74 Cal.Rptr. 793];
 
 Travelers Ins. Co.
 
 v.
 
 Norwich Union Fire Ins. Soc.,
 
 221 Cal.App.2d 150, 153-154 [34 Cal.Rptr. 406];
 
 Pleasant Valley Assn.
 
 v.
 
 Cal-Farm Ins. Co.,
 
 142 Cal.App.2d 126, 135-136 [298 P.2d 109]). “[N]o insurer which deliberately breaches its obligation to the insured should be permitted thereby to profit, whether at the expense of the insured, or of an insurer which faithfully discharges its obligation.”
 
 (Continental Cas. Co.
 
 v.
 
 Zurich Ins. Co.,
 
 57 Cal.2d 27, 38 [17 Cal.Rptr. 12, 366 P.2d 455].)
 

 
 *577
 
 And it is also said that such controversies between insurance companies will be resolved according to general principles of equity. The rule is well stated in
 
 Amer. Auto. Ins. Co.
 
 v.
 
 Seaboard Surety Co.,
 
 155 Cal.App.2d 192, 195-196 [318 P.2d 84], in this manner: “The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.. .. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders.”
 

 We are of the opinion that the trial court’s awards of defense costs to the several insurance carriers who defended the four boys in the Nelson case comported with apposite principles of law and equity. There was neither error, nor abuse of discretion, in the premises.
 

 The judgment is affirmed.
 

 Racanelli, P. J., and Broussard. J.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied October 21, 1977, and the petition of appellant Insurance Company of North America for a hearing by the Supreme Court was denied November 30, 1977.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.