[No. B089354. Second Dist., Div. Six. May 14, 1996.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Respondent, v. ROSEMARY FLORES et al., Defendants and Appellants.

## COUNSEL

Diane M. Matsinger, Eaton & Jones and Samuel K. Eaton, Jr., for Defendants and Appellants.

Gilbert, Kelly, Crowley & Jennett and Peter J. Godfrey for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—An insured drives his van to a location to allow his passenger to shoot someone from the van. The driver has a standard auto insurance policy that provides coverage for injuries caused by an accident. Does the policy provide the driver with coverage for injuries to the victim? No.

Rosemary and David Flores (Flores) appeal from the judgment in favor of respondent, Interinsurance Exchange of the Automobile Club of Southern California (Automobile Club) in this declaratory relief action. We affirm the judgment.

## FACTS

The facts are stipulated. An unknown pedestrian punched Eric Michael Sanders in the face while Sanders sat in his van waiting for a traffic light to change at State Street and Figueroa in Santa Barbara. Sanders told Roger Perez of the incident. Perez suggested they return to the scene, locate the assailant and seek retribution. Perez told Sanders he was armed with a handgun before he and others got into the van. Sanders knew that someone was likely to get shot. He drove Perez and the others back to the intersection where Sanders had been punched. David Flores stood on the corner of the intersection. While Sanders drove by, Perez intentionally shot and injured Flores from the van. The van itself did not inflict any injury on Flores, nor was it used to block or pin down Flores.

After his arrest for his involvement in the shooting, Sanders admitted that he knew someone was likely to be shot. In the criminal action Sanders pled nolo contendere to the felony of aiding and abetting the shooting of Flores (Pen. Code, § 245, subd. (a)(2)). (People v. Sanders (Super. Ct. Santa Barbara County, 1990, No. 182329).)

Rosemary Flores, individually, and as guardian ad litem for David Flores, filed the underlying civil suit against Sanders and others for conspiracy, battery and negligence. The Floreses' suit alleged, inter alia, that Sanders and Perez "agreed to hunt down, shoot, and either kill or maim the perpetrator of the Sanders attack, using Roger Perez's .22 caliber handgun." These allegations were incorporated into each cause of action in the Floreses' suit.

Sanders owns the van involved and his parents insured it for him under an automobile insurance policy issued by the Automobile Club. The Automobile Club reserved its rights to deny coverage and filed the instant declaratory relief action to determine whether or not it had a duty to defend or indemnify Sanders for liability in the underlying Flores action under the policy.

The trial court denied summary judgment to the Automobile Club and the parties proceeded to trial by the court on the stipulated facts. After trial, the trial court found that the shooting was not an accident, that Sanders acted intentionally in aiding and abetting the shooting and that the injuries inflicted on the Flores family were not covered by the instant policy. In its judgment, the trial court ruled that the Automobile Club is not obligated to indemnify Sanders for liability he may have to the Floreses. This appeal ensued from the judgment.

## Discussion

### *Interpretation*

■ Interpretation of the insurance policy presents a question of law for this court to decide. (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619]; *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100 [109 Cal.Rptr. 811, 514 P.2d 123].) We consider the stipulated facts and the allegations of the Floreses' complaint together with the language of the insurance policy. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

■ The duty of an insurance company to defend a claim of coverage is broad. (*Montrose Chemical Corp.* v. *Superior Court, supra*, 6 Cal.4th at p. 295.) Courts first consider whether there may be a potential for coverage under the policy. (*Waller* v. *Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 16.) The insured has the burden to bring the claim within the basic scope of coverage; the insurer must establish the absence of such coverage. (*Montrose, supra*, at pp. 295, 300; *Waller, supra*, at p. 16.) Courts will not indulge in a forced construction of the policy's insuring clauses to find coverage. (*Waller, supra*, at p. 16.) And, courts construe policy terms in their " 'ordinary and popular sense.' " (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1265 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Waller, supra*, at p. 18.)

■ Because the Automobile Club reserved its rights, any allegations or judgment of negligence in the underlying civil suit would not preclude the insurance company from asserting there is no coverage here because Sanders expected or intended harm to occur. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.* (1991) 52 Cal.3d 1009, 1017 [278 Cal.Rptr. 64, 804 P.2d 689].)

## Coverage

### *Use of the vehicle*

■ In an insurance policy, the phrase "arising out of the use" has broad and comprehensive application. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at p. 100.) It affords coverage for injuries where the insured vehicle bears "almost *any* causal relation" to the accident at issue, however minimal. (*Id.* at p. 100; see also *id.*, at fn. 7; *id.* at p. 101, fn. 8.) Here, Sanders drove to the scene for the purpose of seeking retaliation and left the scene of the shooting by use of the van. The insurer admits that the van "was

passing through the intersection" when Perez shot Flores. We agree with the trial court that the Sanders van was being used at all pertinent times within the meaning of the instant policy language.

## Occurrence

■ The instant policy promises to "pay damages for which any person insured is legally liable because of bodily injury . . . *caused by an occurrence* arising out of the ownership, maintenance or use" of the insured vehicle. (Italics added.) "Occurrence" is defined to mean "an *accident . . .* , including injurious exposure to conditions, which results in bodily injury . . . ." (Italics added.) Therefore, the instant policy provides coverage to Sanders only if he accidentally caused the injury to Flores. "[T]he insured has the burden of showing that there has been an 'occurrence' within the terms of the policy." (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 16.)

When an injury is an unexpected or unintended consequence of the insured's conduct, it may be characterized as an accident for which coverage exists. When the injury suffered is *expected* or *intended,* coverage is denied. When one expects or intends an injury to occur, there is no "accident." (*Chu* v. *Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86, 96 [274 Cal.Rptr. 20].)

■ Flores argues that Sanders's acts were not intended or expected because he did not shoot Flores himself or direct that he be shot. Therefore, his conduct was, at most, reckless. (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158-159 [181 Cal.Rptr. 784, 642 P.2d 1305]; *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 101; *National American Ins. Co.* v. *Insurance Co. of North America* (1977) 74 Cal.App.3d 565, 571 [140 Cal.Rptr. 828].) We disagree. The cases cited by appellant are distinguishable.

In *Peterson,* a driver drove with excessive speed after consuming alcohol. In deciding issues not relevant here, our Supreme Court explained that conduct amounting to a conscious disregard for the safety of others does not constitute willful, intentional conduct within the meaning of Insurance Code section 533.[1] (*Peterson* v. *Superior Court, supra,* 31 Cal.3d at pp. 158-159.) Section 533 states an insurer is not liable for the willful acts of its insured.

In *Partridge,* the insured filed the trigger mechanism of his pistol at home so that the gun would have a "hair trigger action." The insured took the gun

---

[1]All further statutory references are to the Insurance Code unless otherwise stated.

into his Bronco truck and placed it either on his lap or on top of the steering wheel. While the insured was driving, he saw a rabbit crossing the road. He drove off the road onto rough terrain to follow the rabbit. When the truck hit a bump, the gun discharged and caused injury to a passenger in the vehicle. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at pp. 97-98.)

The insurance company filed a declaratory relief action to determine whether its homeowners or its automobile policy provided coverage for the damages caused by the injuries incurred as a result of the accident. The trial court ruled that both policies afforded coverage and our Supreme Court affirmed. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at pp. 97, 106-107.)

Filing the trigger mechanism and transporting the gun independently concurred to proximately cause the accident. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at p. 97.) The insured's automobile policy provided coverage because the insured was using the truck at the time the gun accidentally discharged. (*Id.* at pp. 97, 100-101.) The homeowners policy also provided coverage, despite an express exclusion for injuries arising out of use of a vehicle, because the insured's negligent filing of the trigger mechanism was an independent, concurrent covered proximate cause of the accidental injury. (*Id.* at pp. 97, 102, 105.)

█ Because coverage clauses are broadly construed in favor of the insured and express exclusions are strictly construed against the insurer, an insurer is liable if one of such multiple causes is a covered one. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at pp. 101-103, 105, fn. 11.) Even though the circumstances in *Partridge* "can only be described as blatant recklessness" (*id.* at pp. 97, 106-107), the concurrent negligent causes of the incident were covered under the policies.

In *National American*, four teenage boys rode in an automobile indiscriminately throwing eggs at other automobiles, homes and people. While the automobile was traveling about 40 miles an hour, one of the boys flipped an egg towards a pedestrian who lost an eye as a result. The most significant factor causing the injury was the speed of the automobile. (*National American Ins. Co.* v. *Insurance Co. of North America, supra*, 74 Cal.App.3d at p. 571.) A jury returned a verdict of liability for negligence against the boy who flipped the egg. The issue in *National American* was not coverage, but causation.

The Court of Appeal stated that substantial evidence supported the findings of the trial court that the injury resulted from negligent conduct which

caused an accident involving the use of an automobile. (*National American Ins. Co.* v. *Insurance Co. of North America, supra,* 74 Cal.App.3d at pp. 571-572.) It affirmed the judgment of the trial court and concluded that the judgment comported with policies of law and equity regarding indemnity and defense costs among insurers. (*Id.* at p. 577.)

■ Drunk driving, leaving a loaded hair trigger weapon on one's lap and flipping eggs out of a car at 40 miles an hour all constitute negligent or reckless conduct which may cause injury. As such, they all constitute "accidents" within the meaning of personal injury insurance policies because the injuries are not intended or expected.

■ Here, however, the underlying complaint and the stipulated facts establish that the instant shooting was no accident. It was planned. Sanders knew Perez was armed with a deadly weapon. He drove Perez to the place where he thought they might find the person who had punched him. Sanders knew that someone was likely to be shot. Sanders therefore intended and expected injury to result from his acts. The Floreses have not borne their burden to show that Sanders's conduct was accidental within the meaning of the instant insurance policy. Accordingly, the Floreses did not establish potential coverage for the shooting incident.

EXCLUSIONS

*Section 533*

■ Coverage is also excluded because the acts were willful within the meaning of section 533, which provides a statutory exclusion in every insurance policy. (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1019.) Section 533 states, "*An insurer is not liable for* a loss caused by the *wilful act of the insured; but* he is *not exonerated by the negligence* of the insured, or of the insured's agents or others." (Italics added.) We determine the Legislature's intent in passing section 533 by considering the words of the statute. (*J. C. Penney, supra,* at p. 1020.) Neither the words of section 533 nor its legislative history establishes its meaning. (*Ibid.*)

Because a negligent act may be done "wilfully"—the act is volitional—the term "wilful act" in section 533 means something more than performing a voluntary act which constitutes negligence. (*J. C. Penney Casualty Ins. Co.* v. *M. K., supra,* 52 Cal.3d at p. 1021.)

Our Supreme Court has explained that ". . . section 533 does not preclude coverage for acts that are negligent or reckless." (*J. C. Penney Casualty Ins.*

*Co.* v. *M. K.*, *supra*, 52 Cal.3d at p. 1021.) Where application of section 533 becomes an issue, the insurance company must establish that the insured acted with intent to harm or that the insured committed an inherently wrongful act. (52 Cal.3d at pp. 1021-1027.)

But, the general rule of strict construction against the insurer regarding exclusions does not apply to section 533 because it is a statutory exclusion evincing a fundamental public policy. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at pp. 1019, 1020, fn. 9.) If coverage is excluded under section 533, we may not consider whether there may be coverage under any express exclusions stated in the insurance policy. (52 Cal.3d pp. 1019-1020, fn. 8.) Whether there may be coverage due to section 533 depends upon the facts of the case.

There may be coverage under section 533 for an accident caused by drunk driving because drunk driving, per se, is reckless conduct. (See generally, *Peterson* v. *Superior Court*, *supra*, 31 Cal.3d at p. 159.) There may not be coverage for an act such as child molestation because that act is deemed to be inherently wrongful or harmful in itself. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at pp. 1021-1027.)

Although the Supreme Court expressly limited *J.C. Penney* to child molestation, its dictum establishes that under section 533, an insurer bears no liability if the insured acted with intent to harm or committed an inherently wrongful act without legal justification. (See *J. C. Penney Casualty Ins. Co.* v. *M. K.*, *supra*, 52 Cal.3d at pp. 1025, fn. 13, 1021-1027; see also *Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1357-1358 [1 Cal.Rptr.2d 360]; *Jacobs* v. *Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1269, fn. 8, 1270, 1278 [42 Cal.Rptr.2d 906].)

 Here, Sanders pled nolo contendere to the felony criminal charge of aiding and abetting an assault with a deadly weapon. "The legal effect of such a [nolo] plea, . . . shall be the same as that of a plea of guilty for all purposes." (Pen. Code, § 1016, subd. 3.) Guilty and nolo pleas are admissible in a subsequent civil action, such as the underlying action, as an admission of the crime. Therefore, Sanders admitted committing the crime of aiding and abetting an assault with a deadly weapon.

The admission is not conclusive, per se, and has no collateral estoppel effect. A plea may reflect a compromise or a choice not to undergo prosecution; it does not necessarily establish the underlying factual matters at issue in the civil litigation. (*People* v. *Goodrum* (1991) 228 Cal.App.3d 397, 402 [279 Cal.Rptr. 120]; *Pease* v. *Pease* (1988) 201 Cal.App.3d 29, 32-33

[246 Cal.Rptr. 762], citing Justice Traynor in *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr. 559, 375 P.2d 439].)

■ Under section 533, the question here is whether Sanders's admission of the crime of aiding and abetting assault with a deadly weapon, together with the other stipulated or pleaded facts, constitute acts which are either inherently harmful or which evince an intent to harm.

The stipulated facts establish that Sanders drove Perez back to the intersection where Sanders had been punched in order to retaliate. Sanders knew someone was likely to get shot. ■ When an offense includes the intent to do some act beyond the actus reus of the crime, one who aids and abets the crime *must share the specific intent of its perpetrator. (People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318].) Although the stipulated facts do not state the crime for which Perez was charged and convicted, they do state that "Roger Perez intentionally shot David Flores with a .22 caliber revolver while Roger Perez was inside the van."

By aiding and abetting the intentional shooting, Sanders is a principal to it and he is equally guilty for that act. (CALJIC No. 3.00.) ■ Under these facts, we conclude that Sanders harbored intent to harm within the meaning of section 533. (*Fire Ins. Exchange* v. *Altieri, supra,* 235 Cal.App.3d at pp. 1359-1360.)

The underlying complaint also supports our conclusion that Sanders evinced an intent to harm another. Each of its causes of action incorporate by reference the allegation that Sanders and Perez "agreed to hunt down, shoot, and either kill or maim the perpetrator of the Sanders' attack, using Roger Perez' .22 caliber handgun."

The Automobile Club has established that it may deny coverage under the implied exclusion set forth in section 533. (*Fire Ins. Exchange* v. *Altieri, supra,* 235 Cal.App.3d at pp. 1357-1360 [no duty to indemnify for assault even though assailant asserted he did not intend to injure victim]; *Reagen's Vacuum Truck Service, Inc.* v. *Beaver Ins. Co.* (1994) 31 Cal.App.4th 375, 388 [37 Cal.Rptr.2d 89].) Because coverage is excluded here under section 533, we need not consider whether there may be coverage under the express policy exclusion for bodily injury intentionally caused by or at the direction of an insured.

CONCLUSION

■ "The concept of 'fortuity' is basic to insurance law. Insurance typically is designed to protect [against] contingent or unknown risks of

harm [citations], not to protect against harm which is certain or expected. [Citation.]" (*Chu* v. *Canadian Indemnity Co.*, *supra*, 224 Cal.App.3d at pp. 94-95; *Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at pp. 16-17.) Sanders expected harm to occur here and he acted deliberately to help bring it about. Under the stipulated facts and allegations in the underlying complaint, the Automobile Club need not defend or indemnify the Floreses' claims against Sanders.

The judgment is affirmed. Each party to bear its own costs.

Stone (S. J.), P. J., and Yegan, J., concurred.