[No. B202768. Second Dist., Div. Three. June 26, 2008.]

STATE FARM FIRE AND CASUALTY CO. et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOSHUA WRIGHT, Real Party in Interest.

## COUNSEL

Horvitz & Levy, Peter Abrahams, Mitchell C. Tilner; Crandall, Wade & Lowe, William R. Lowe and Curtis L. Metzgar for Petitioners.

No appearance for Respondent.

Blumberg Law Corporation, Ave Buchwald; Law Offices of Moss, Hovden & Lindsay and Del D. Hovden for Real Party in Interest.

## OPINION

**ALDRICH, J.—**

### INTRODUCTION

If an insured throws someone into a swimming pool intending to get the other person wet, but by mistake does not throw hard enough and so the latter lands on the pool's cement step and suffers injuries, is the incident an "accident" within the meaning of insurance law? We conclude it is.

In an action for damages for personal injuries and declaratory relief brought by real party in interest Joshua Wright against Jeffrey Lint and his insurer, State Farm Fire and Casualty Co. and State Farm General Insurance Co. (together State Farm), the trial court ruled that State Farm owed a duty to defend Lint. In so ruling, the trial court stated that "the evidence is pretty clear that [Lint] didn't intend to harm [Wright]." State Farm filed a petition for writ of mandate seeking an order directing the trial court to vacate its order and enter instead a judgment declaring that State Farm has no duty to defend Lint against Wright. State Farm reasons that Lint's conduct giving rise to Wright's lawsuit was deliberate and so it was not an accident, irrespective of whether Lint intended the injury. We deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are stipulated: Lint, then 21 years old, resided with his parents. Wright was 23 years old. Lint was bigger than Wright.

Both men attended a party. During the evening, the two began to argue. After an exchange of words, Wright went outside. Lint followed Wright, grabbed him, picked him up, and threw him into the shallow end of the swimming pool. Wright landed on the pool's concrete step, which was not covered by water. Wright sustained a fractured right clavicle and was hospitalized for approximately four days.

Lint apologized to Wright. Wright reported that, after the incident, Lint told him that Lint had not meant to hurt him. Wright characterized the incident as "horse-playing around."

Lint was arrested for the swimming pool incident and entered a nolo contendere plea to a charge of misdemeanor battery (Pen. Code, § 242).

Lint's parents had a valid homeowners insurance policy issued by State Farm (policy No. 71-NE-1108-6). Lint was an insured under this policy. The policy covered "damages because of bodily injury . . . caused by an occurrence . . . ." An "occurrence" was defined in the policy as "an accident, including exposure to conditions, which results in: [¶] a. bodily injury; or [¶] b. property damage . . . ." The policy excluded from coverage, "[B]odily injury . . . [¶] (1) which is either expected or intended by the insured; or [¶] (2) which is the result of willful and malicious acts of the insured."[1]

---

[1] Cf. Insurance Code section 533, which reads in relevant part: "[a]n insurer is not liable for a loss caused by the wilful act of the insured . . . ."

Wright's counsel notified State Farm of a claim arising out of the incident. In a recorded statement obtained by State Farm, Lint said, "if I wanted to hurt this guy . . . I would have just hit him, but I didn't want to hurt him."

State Farm notified the Lints that it was reserving its right to deny a defense and indemnity. In November 2002, State Farm informed Lint that it was denying a defense and indemnity on several grounds, among which was that "The claim against you does not meet the insuring agreement in the policy, as the actions do not arise out of an accident. Also, the policy specifically excludes damages which are either expected or intended by the insured or the result of willful and malicious conduct."

Wright filed his complaint against Lint, alleging negligence among other things. In his deposition, Lint testified that, when he followed Wright outside, he did not plan to "kick his ass" and did not intend to hurt Wright. Lint intended only to talk to Wright. Lint threw Wright in the pool "[j]ust to get him wet," "[j]ust a party joke," or "horseplaying," "something to laugh about."

The Lints again tendered the defense to Wright's lawsuit to State Farm and included a copy of Lint's deposition transcript. State Farm again denied a defense and indemnity on the ground that Wright's injuries were not caused by an occurrence or an accident.

Lint filed a declaratory relief action against State Farm (*Lint v. State Farm Fire & Casualty Co.* (Super. Ct. L.A. County, 2004, No. VC040632 (cause dism.)); hereinafter the declaratory relief action). Therein, Lint sought a declaration that the State Farm policy covered his acts in that his acts "were either negligent, less than willful, or, if found to be willful, were not done with a pre-conceived design to inflict injury, or [were] not intended or expected to cause bodily harm, and/or that [he] did not know or believe that his conduct was substantially certain or highly likely to result in the kind of damage that occurred."

Lint and Wright stipulated to entry of judgment in Lint's declaratory relief action. Thereunder, Lint agreed to pay Wright and his attorneys $60,000 and assigned all of his rights against State Farm to Wright.

Wright then amended his complaint to delete all his causes of action against Lint except for one sounding in negligence, and to allege causes of action against State Farm for declaratory relief and breach of contract. In particular, Wright's complaint alleged that "On or about December 27, 2001,

Defendants, and each of them, negligently, carelessly and recklessly touched plaintiff during horseplay while attempting to wrestle him . . . ."

The trial court consolidated Wright's action with the declaratory relief action and trifurcated the issues. First, the court would resolve the question of whether State Farm owed a duty to defend Lint. At the close of trial of phase one, the court ruled that State Farm owed a duty to defend. The court recited the rule that when an injury is an unexpected or unintended consequence of the insured's conduct, it may be characterized as an accident for which coverage exists. (*Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 669 [53 Cal.Rptr.2d 18] (*Flores*).) The court found that Lint did not intend to cause any injury to Wright; he only wanted to get Wright wet. Thus, the injury was neither expected nor intended. After this ruling was reduced to a statement of decision and final order, State Farm brought this writ proceeding.

## DISCUSSION

### 1. *Standard of review*

The facts are undisputed. Thus, the interpretation of the State Farm insurance policy is a question of law, which we review de novo. (*Bluehawk v. Continental Ins. Co.* (1996) 50 Cal.App.4th 1126, 1131 [58 Cal.Rptr.2d 147].)

■ Under the rules of policy interpretation, we look to the language of the contract to ascertain its plain meaning "or the meaning a layperson would ordinarily attach to it. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) We give effect to the mutual intent of the parties at the time the contract was formed, inferable if possible, from the written policy. (*Ibid.*, citing Civ. Code, §§ 1636, 1639.) Our interpretation is controlled by " '[t]he "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation] . . . .' " (*Waller v. Truck Ins. Exchange, Inc., supra*, at p. 18.)

■ "[C]overage clauses are broadly construed in favor of the insured and express exclusions are strictly construed against the insurer . . . ." (*Flores, supra*, 45 Cal.App.4th at p. 670.) In a declaratory relief action to determine the duty to defend, "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

## 2. *The duty to defend and the insurance policy at issue here*

■ "It has long been a fundamental rule of law that an insurer has a duty to defend an insured if it becomes aware of, or if the third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement. [Citations.] This duty . . . is separate from and broader than the insurer's duty to indemnify. [Citation.]" (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 19.) " '[F]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.] Hence, the duty "may exist even where coverage is in doubt and ultimately does not develop." [Citation.]' [Citation.]" (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at p. 295.)

By contrast, " ' "where there is no possibility of coverage, there is no duty to defend . . . ." ' [Citation.] . . . [¶] . . . [W]here the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 19.) Hence, " 'the insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.' [Citation.]" (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at p. 300, italics omitted.)

■ "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. [Citations.]" (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 19.)

As observed, the policy here provides liability coverage for "damages because of bodily injury . . . caused by an occurrence . . . ." An "occurrence" is "an accident, including exposure to conditions, which results in: [¶] a. bodily injury . . . ." The policy thus provides coverage to Lint only if Wright's injury was the result of an accident. The State Farm policy at issue here does not define the word "accident."

3. *Because Lint did not intend all of the acts in the causal series of events leading to Wright's injury, the stipulated facts presented the potential for coverage under the policy and so State Farm had a duty to defend Lint.*

■ The meaning of the term "accident" in insurance law is not settled. Our Supreme Court has observed on more than one occasion that " 'No all-inclusive definition of the word "accident" can be given . . . .' " (*Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 559 [91 Cal.Rptr. 153, 476 P.2d 825], quoting from *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563–564 [334 P.2d 881]; see also *Hyer v. Inter-Insurance Exchange, etc.* (1926) 77 Cal.App. 343, 348 [246 P. 1055].)

State Farm points to numerous cases that stand for the proposition that where the conduct is deliberate or volitional, the incident is not an "accident" for the purposes of insurance law. (*Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435] ["An intentional act is not an 'accident' within the plain meaning of the word." (Fn. omitted.)]; *Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1045–1046 [92 Cal.Rptr.2d 473] ["[C]ourts have consistently defined the term ['accident'] to require unintentional acts or conduct. [Citations.] The plain meaning of the word 'accident' is an event occurring unexpectedly or by chance. [Citation.]"].) State Farm asserts that, where the term "accident" refers to the injury-producing act, it is irrelevant that the insured did not intend the injury that flowed from the act. (*Quan v. Truck Ins. Exchange* (1998) 67 Cal.App.4th 583, 599 [79 Cal.Rptr.2d 134] ["[W]hether the insured intended the harm that resulted from his conduct is not determinative. The question is whether an accident gave rise to [the victim's] injuries."].) Therefore, State Farm argues, because Lint indisputably deliberately threw Wright into the pool, his conduct was *intentional* and not an accident, regardless of whether Lint intended for the effect of his act to injure Wright.

■ However, the term "accident" has also been used to refer to the unintended or unexpected *consequence* of the act. "When an injury is an unexpected or unintended consequence of the insured's conduct, it may be characterized as an accident for which coverage exists. When the injury suffered is *expected* or *intended*, coverage is denied. When one expects or intends an injury to occur, there is no 'accident.' " (*Flores, supra,* 45 Cal.App.4th at p. 669, quoting *Chu v. Canadian Indemnity Co.* (1990) 224 Cal.App.3d 86, 96 [274 Cal.Rptr. 20].) "The fact that an act which causes an injury is intentional *does not take the consequence of that act outside the coverage of a policy* which excludes damage unless caused by accident for if the *consequence* that is the damage or injury *is not intentional and is unexpected it is accidental* in character. [Citation.]" (*Meyer v. Pacific*

*Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542], italics added.) ■ In *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., supra,* 51 Cal.2d 558, the Supreme Court stated that "accident" "has been defined 'as "a casualty—something out of the usual course of events and which *happens* suddenly and unexpectedly and without design of the person injured." [Citations.]' [Citation.] It ' "includes any event which takes place without the foresight or expectation of the person acted upon or affected by the event." ' [Citations.]" (*Id.* at p. 563, italics added, original italics omitted.) These statements defining the term "accident" employ the words "consequence" and "happen," thereby indicating that an accident can exist when either the cause is unintended or the effect is unanticipated.

In *Flores,* relied on by the trial court, Sanders was the driver of an insured automobile in which Perez was the passenger with a gun. The two agreed to drive into Santa Barbara to seek retribution against Flores for an earlier assault on Sanders. As Sanders drove by, Perez intentionally shot at Flores, who was standing on the street, injuring him. (*Flores, supra,* 45 Cal.App.4th at p. 667.) The automobile policy at issue contained a provision similar to the State Farm policy here, in which an occurrence was defined to mean an accident. (*Id.* at p. 669.) *Flores* discussed cases in which the insured engaged in reckless conduct that caused a covered injury: leaving a loaded hair trigger weapon on one's lap while driving over a bumpy road, flipping eggs out of a car at 40 miles per hour, and drunk driving. (*Id.* at pp. 669–670, citing *Peterson v. Superior Court* (1982) 31 Cal.3d 147 [181 Cal.Rptr. 784, 642 P.2d 1305]; *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94, 101 [109 Cal.Rptr. 811, 514 P.2d 123]; *National American Ins. Co. v. Insurance Co. of North America* (1977) 74 Cal.App.3d 565 [140 Cal.Rptr. 828].) Those cases, *Flores* noted, "all constitute 'accidents' within the meaning of personal injury insurance policies *because the injuries are not intended or expected.*" (*Flores, supra,* at p. 671, italics added.) *Flores* held, unlike the three cases above cited, that the shooting was not an accident because all of the conduct was planned and "Sanders therefore *intended and expected injury to result* from his acts." (*Ibid.,* italics added.)[2]

---

[2] State Farm argues that this statement in *Flores, supra,* 45 Cal.App.4th 661 is dictum and should not be followed "in light of the many cases that conflict with it," and because the issue in *Flores* was whether the injury arose from the use of the insured's vehicle as required under the automobile policy. We disagree. *Flores,* an opinion from this court decided both that the insured's conduct was not "accidental" within the meaning of the policy, and that the injury did not arise from the use of the insured's vehicle. (*Id.* at p. 671.) As noted, the automobile insurance policy at issue in *Flores* contained a provision covering "occurrences" that were defined as "accidents" virtually identical to the policy provision at issue here. (*Id.* at p. 669.) Thus, the conclusion in *Flores* that the injury was not accidental was part of the opinion's holding.

The dictum argument is also unpersuasive. State Farm acknowledges that the statement in *Flores,* to wit, "[w]hen an injury is an unexpected *or* unintended consequence of the insured's

*Meyer v. Pacific Employers Ins. Co., supra*, 233 Cal.App.2d 321 is analogous because the court focused on the consequence of a deliberate act. While drilling a well, the drilling company caused the ground to vibrate resulting in damage to the neighbor's property and buildings. Although the policy language was different, the issue in *Meyer* was whether the adjacent property's damage was *an accident*. (*Id.* at p. 325.) *Meyer* held that an accident existed because, although the company intentionally drilled, there was no evidence that it "intended or expected the vibrations which their operation set in motion would cause damage to plaintiffs' property." (*Id.* at p. 327.)

*National American Ins. Co. v. Insurance Co. of North America, supra*, 74 Cal.App.3d 565, is also instructive. There, four teenagers riding in a car indiscriminately "flipped" eggs at houses and other targets. While their automobile was moving at 40 miles per hour, one of the teens threw an egg at a pedestrian, causing the victim to lose sight in one eye. (*Id.* at p. 569.) In holding that the injuries arose out of the use of an automobile, the appellate court affirmed the trial court's finding that liability resulted from an "accident," under the policy, triggering coverage. (*Id.* at p. 571.)

Similarly, in *Hogan v. Midland National Ins. Co., supra*, 3 Cal.3d 553, the insured sold a defective saw that cut lumber more narrowly than it should have. (*Id.* at pp. 557–559.) *Hogan* focused on the foreseeability of the damages, stating, " ' "[A]ccident" . . . "as a source and cause of damage to property, within the terms of an accident policy, . . . is an unexpected, *unforeseen, or undesigned happening or consequence* from either a known or unknown cause." ' " (*Id.* at p. 559, italics added, quoting from *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co., supra*, 51 Cal.2d at pp. 563–564.)

■ As summarized by *Merced Mutual Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50 [261 Cal.Rptr. 273], "coverage is not always precluded

conduct, it may be characterized as an accident for which coverage exists" is accurate. (*Flores, supra*, 45 Cal.App.4th at p. 669, italics added.) State Farm nonetheless argues that "[t]he trial court here, however, misunderstood *Flores* to support the converse proposition as well—that the policy *does* apply when an insured who acts intentionally does *not* expect or intend his conduct to cause injury." *Flores* was not incorrect. Often policies that define occurrence as an "accident" also include the language " 'which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*' " (See, e.g., *Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 804 [26 Cal.Rptr.2d 391], italics added; *Royal Globe Ins. Co. v. Whitaker, supra*, 181 Cal.App.3d at pp. 534–535; *Quan v. Truck Ins. Exchange, supra*, 67 Cal.App.4th at p. 592.) And, as *Collin* observed, the italicized language " 'merely explains that expected or intended injuries or damage are not "accidents" within the meaning of the policy.' [Citation.]" (*Collin v. American Empire Ins. Co., supra*, at p. 805.) Also, the focus is on whether the *result* or *consequence* of a deliberate act was unexpected or unintended. (*Flores, supra*, at p. 669; *Hogan v. Midland National Ins. Co., supra*, 3 Cal.3d at p. 559.)

merely because the insured acted intentionally and the victim was injured. An accident, however, is never present when the insured performs a deliberate act unless some additional, *unexpected*, independent, *and unforeseen happening* occurs that produces the damage. [Citation.] Clearly, where the insured acted deliberately *with the intent to cause injury*, the conduct would not be deemed an accident. Moreover, where the insured *intended all of the acts that resulted in the victim's injury*, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." (*Ibid.*, italics added.) An injury is not accidental when "[a]ll of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended." (*Merced Mutual, supra,* at p. 50.) "Conversely, *an 'accident' exists when any aspect in the causal series of events leading to the injury or damage was unintended by the insured and a matter of fortuity.*" (*Ibid.*, italics added.)

The following paradigms are illustrative: During a pickup baseball game, a batter hits the ball with the intention of sending it into deep right field for a home run. But, because of the batter's stance and the angle of contact with the ball, the batter sends the baseball in a trajectory that breaks a window in foul territory. The batter deliberately hit the ball and intended that it move far and fast. It cannot be said that this batter intended to cause the property damage, i.e., to hit a foul ball and break the window. This was an accident because one aspect in the causal series of events—too much force at an inadvertent angle leading to the broken window—was unintended by the batter, and as such was fortuitous. In the second example, an intentionally speeding driver negligently hits another car. The speeding was an intentional act; but, "the act directly responsible for the injury—hitting the other car—was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident." (*Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50.) In these examples, the conduct resulting in harm was intended but the ultimate result was not because the actor mistakenly miscalculated the physics involved. (See *Lyons v. Fire Ins. Exchange* (2008) 161 Cal.App.4th 880, 888 [74 Cal.Rptr.3d 649].)

■ The circumstances here, based on the complaint and the undisputed facts discovered by State Farm, parallel the baseball batter, the egging in *National American Ins. Co.*, the speeding driver posited by *Merced Mutual Ins. Co.*, and the drilling company in *Meyer*. Although he deliberately picked Wright up and threw him at the pool, Lint did not intend or expect the consequence, namely, that Wright would land on a step. Lint miscalculated one aspect in the causal series of events leading to Wright's injury, namely, the force necessary to throw Wright far enough out into the pool so that he would land in the water. It is undisputed that Lint did not intend to hurt Wright; he merely intended that Wright land farther out into the water and "get . . . wet." No doubt Lint acted recklessly. But, just as the teenagers

irresponsibly flipping eggs did not intend to cause the victim to lose an eye, and the intentional speeder did not plan to hit another car, Lint rashly threw Wright at the pool without expecting that Wright would land on the cement step. Stated otherwise, the act directly responsible for Wright's injury, throwing too softly so as to miss the water, was an *unforeseen or undesigned happening or consequence* and was thus fortuitous. (*Hogan v. Midland National Ins. Co., supra,* 3 Cal.3d at p. 559.) The event here was an accident because *not* all of the acts, the manner in which they were done, and the objective accomplished transpired exactly as Lint intended. (*Flores, supra,* 45 Cal.App.4th at p. 669; *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 50.)

Alternatively, the policy here excluded from coverage, "[B]odily injury . . . [¶] (1) which is either expected or intended by the insured; or [¶] (2) which is the result of willful *and* malicious acts of the insured."[3] (Italics added.) Based on the complaint and the undisputed facts discovered by State Farm, Wright's injury was neither (1) expected nor intended by Lint, nor (2) the result of a malicious act of the insured.

The cases on which State Farm relies are distinguishable. Many involve sexual harassment or sexual assault. (*Northland Ins. Co. v. Briones* (2000) 81 Cal.App.4th 796, 811 [97 Cal.Rptr.2d 127]; *Quan v. Truck Ins. Exchange, supra,* 67 Cal.App.4th at pp. 592–596; *Merced Mutual Ins. Co. v. Mendez, supra,* 213 Cal.App.3d at p. 52.) Our Supreme Court has stated "[t]here is no such thing as negligent or even reckless sexual molestation." (*J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1021 [278 Cal.Rptr. 64, 804 P.2d 689].) "Some acts are so inherently harmful that the *intent to commit the act and the intent to harm are one and the same. The act is the* harm." (*Id.* at p. 1026, italics added.) Stated otherwise, with respect to sexual molestation, no aspect in the causal series of events can be unintended. (See *Merced Mutual Ins. Co. v. Mendez, supra,* at p. 50.)

In other cases relied on by State Farm the insured intended *all of the acts in the causal chain, including the injury.* (*Stellar v. State Farm General Ins. Co.* (2007) 157 Cal.App.4th 1498, 1506 [69 Cal.Rptr.3d 350] [no accident where insured willfully and intentionally intended to defame]; *ACS Systems, Inc. v. St. Paul Fire & Marine Ins. Co.* (2007) 147 Cal.App.4th 137, 155 [53 Cal.Rptr.3d 786] [no accident where insured who sent offending fax transmissions intended that faxes be received]; *Ray v. Valley Forge Ins. Co., supra,* 77 Cal.App.4th at p. 1046 [no accident where insured roofing consultant intended homeowners' association's use of the materials he selected]; *Miller v. Western General Agency, Inc.* (1996) 41 Cal.App.4th 1144, 1150 [49 Cal.Rptr.2d 55] [no accident because insured's negligent misrepresentation

---

[3] See footnote 1, *ante.*

involved " ' *"intent to induce reliance"* ' "]; *Dykstra v. Foremost Ins. Co.* (1993) 14 Cal.App.4th 361, 366 [17 Cal.Rptr.2d 543] [same]; *Collin v. American Empire Ins. Co., supra,* 21 Cal.App.4th 787 [insured admitted conversion of property was intentional and willful]; *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 539 [12 Cal.Rptr.2d 629] [no accident where insured conspired to engage in fraudulent billing scheme because "none of the damages asserted arose from an accidental 'occurrence' . . ."]; *Commercial Union Ins. Co. v. Superior Court* (1987) 196 Cal.App.3d 1205, 1209 [242 Cal.Rptr. 454] [no accident where firing employee was intentional].)

Taken to its logical conclusion, State Farm's argument that we should apply "fortuity" solely to the act causing the injury without reference to the injury, would result in no coverage at all. State Farm proffers an accident as one where Lint inadvertently bumps into Wright, knocking him into the pool. Yet, in State Farm's analysis, there could never be a covered event because all batters deliberately seek to hit baseballs and therefore engage in intentional acts, regardless of whether the property damage, namely, breaking windows, was intended. Likewise, there would never be a covered occurrence when an injury is occasioned by a negligent driver, who obeys the laws of the road, nevertheless miscalculates a lane change and hits another car. (Cf. *Meyer v. Pacific Employers Ins. Co., supra,* 233 Cal.App.2d at p. 327 ["Certainly no one would contend that an injury occasioned by negligent or even reckless driving was not accidental within the meaning of a policy of accident insurance . . . ."].) Under State Farm's analysis all accident-based automobile insurance policies would be illusory.

■ Finally, the parties disagree about the effect of Lint's nolo contendere plea to misdemeanor battery. Lint stipulated that he intended to pick Wright up in a bear hug, the elements of misdemeanor battery. (Pen. Code, § 242.) Regardless of whether this plea may be considered by State Farm (cf. *Flores, supra,* 45 Cal.App.4th at pp. 673–674), the result remains the same because intent to commit bodily injury is not an element of misdemeanor battery. (Pen. Code, § 242; *Allstate Ins. Co. v. Overton* (1984) 160 Cal.App.3d 843, 848 [206 Cal.Rptr. 823]; but see *Fire Ins. Exchange v. Altieri* (1991) 235 Cal.App.3d 1352, 1360, fn. 7 [1 Cal.Rptr.2d 360].) Therefore, the potential for coverage exists notwithstanding Lint's plea to misdemeanor battery.

Based on the above analysis, the allegations of the instant complaint along with the stipulated facts asserted a claim that was a potentially covered occurrence under State Farm's insurance policy. Therefore, the trial court properly ruled that State Farm owed a duty to defend Lint.

## DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is denied. Petitioners are to bear the costs of this writ proceeding.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied July 15, 2008, and on July 9, 2008, the opinion was modified to read as printed above. Petitioners' petition for review by the Supreme Court was denied October 16, 2008, S165938.