[No. A101894. First Dist., Div. Two. Mar. 5, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY DOUGLAS MORSE, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*The opinion filed on March 5, 2004, is certified for publication pursuant to rules 976(b) and 976.1, of the California Rules of Court, and it is ordered published in the official reports, with the exception of parts II, III, and IV.

## Counsel

Rodney Richard Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**LAMBDEN, J.**—A stop and search of Timothy Douglas Morse's car revealed a Molotov cocktail in the trunk that, Morse admitted, he had made and meant to use to fix his car or, failing that, to torch it. A jury found him guilty of possessing an incendiary device in violation of Penal Code section 453, subdivision (a) (unspecified further section references are to that code), and the court found true a bifurcated allegation of a prison-term prior for driving under the influence (DUI) (§ 667.5, subd. (b); Veh. Code, § 23153, subd. (a)). Sentenced to a midterm of two years for the offense plus one for the prior, Morse appeals. We find no error and affirm the judgment.

### Background

The trial testimony came entirely from the arresting officer, Stuart Tan of the Vacaville Police Department, and Morse. Tan responded at 12:30 p.m. on November 29, 2002, to a radio dispatch for a Dundee Court address in Vacaville and, seeing a man (Morse) drive off as he got there, had a fellow officer, Larsen, stop the car, a 1988 Toyota Cressida. Tan went to the stop site, a short distance away, and did a search of the car. In the trunk, along with a tool belt and various tools, he found what he believed was an incendiary device—a Frappuccino bottle about two-thirds full of a goldish liquid that looked like gasoline. A piece of cloth stuck partly out through the top and the rest went down into the liquid. The device was wrapped in a knotted plastic bag, and the bag was inside a plastic bucket. Turning toward Morse, who was resting against Larson's car, Tan held up the item and asked, "What is this?" Morse told him it was "for fixing his car." When Tan gave him a puzzled look, Morse explained that he had been working on his car because it wasn't running right, was becoming frustrated with fixing it, and was going to use the device "to burn up his car." He said he had made the

device himself and that it contained gasoline. After being placed under arrest for having the device, Morse spoke twice more about it, once there and once at the police station, staying with "the same story," that he was frustrated with his car: "He'd been working on it for some time. Couldn't get it to run right. So he made this device to burn up his car." Tan was not sure whether Morse was joking, Morse having smiled a couple times during the conversation, and so "asked him several times if he was serious" about what he meant to do with the device. Tan asked at least three times, including once at the station when confirming that this was Morse's official statement.

Morse's testimony, implicitly rejected by the jury, was that he made the device only "to prime the carburetor of a car, to fix it, start it," that he was not serious about burning anything up with it, and that he said that because it "resembled" an incendiary device and Tan "was going to think what he wanted to anyways." Morse claimed "hands-on experience" but no formal training in mechanics. Conceding on cross-examination that he didn't know whether his 1988 Toyota had a carburetor or, instead, had fuel injection, he maintained that the gasoline was to fix *another* car of his, a van he had been working on earlier that same week. He could not say whether the van was a 90's, 80's or 70's model, but he thought it was a Dodge and had a carburetor (although he could not say what kind). After equivocating on whether he knew gas was highly volatile and could be ignited by a lit cigarette, he admitted being there when a friend, Robert Pulido, dropped a lighter while siphoning gas for Morse's vehicle and ignited a Hertz truck.

Tan testified in rebuttal that Morse had never said anything to him about working on a van or using the device for anything beyond burning up his Toyota.

DISCUSSION

## I. *Intent to Torch One's Own "Property"*

Morse claims lack of substantial evidence, not for lack of evidence that he intended to set his car on fire, but because, he urges, one cannot be convicted under section 453 for having an incendiary device with an intent to torch *one's own* "property." Conceding that section 453 places no such limitation on the word "property," he argues that we should imply one from the arson statute, section 451, which does.[1] Morse also likens section 453 to an

---

[1] Section 451 states in part: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." [¶] . . . [¶] (d) Arson of property is a felony punishable by imprisonment in the state prison for 16 months, two, or three years. For purposes of this paragraph, arson of property does not include one burning or causing to be

"attempt" statute that "seeks to prevent and penalize arson at its inchoate or preparatory stage of possessing the material needed to create the fire"; then, citing federal law construing a violent-felony provision of the Armed Career Criminal Act (18 U.S.C. § 924(e)(1)) to require that a prior attempt conviction involve a risk of violent confrontation (*U.S. v. Weekley* (9th Cir. 1994) 24 F.3d 1125), he urges that there is no such risk when one intends to torch his own property. He also points out that mere possession of an incendiary device is not enough to violate section 453, that one must also have a willful and malicious intent (see fn. 1, *ante*). Finally, he argues that to read the attempt-like section 453 "so as to be broader in scope than section 451 would produce a legal anomaly" and "demean the importance of . . . section 4, which requires that code provisions 'be construed according to the fair import of their terms, with a view to effect [their] objects and to promote justice.' " "Thus," he argues, "a particular kind of intention must be proven, i.e.[, an] intention to destroy *another's* property." We are not convinced by his arguments and find uncited California case law on arson to be largely dispositive.

The general arson statute does not require, as Morse supposes, an "intention to destroy . . . property," whether another's or one's own; it requires only a general intent. "The statute does not require an additional specific intent to burn a 'structure, forest land, or property,' but rather requires only an intent to do the act that causes the harm. This interpretation is manifest from the fact that the statute is implicated if a person 'causes to be burned . . . any structure, forest land, or property.' " (*People v. Atkins* (2001) 25 Cal.4th 76, 86 [104 Cal.Rptr.2d 738, 18 P.3d 660] (*Atkins*).) While the code did once require a specific "intent to destroy," this was dropped with a recodification in 1929 (*id.* at pp. 86–87), "leaving 'wilfully and maliciously' as the only mental element" (*id.* at p. 87). "Arson's malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' [Citation.] Its willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire: ' "in short, a fire of incendiary origin." ' " (*Id.* at p. 88.) Thus, if no intent to destroy property is needed for arson generally, Morse cannot argue that it is anomalous not to imply one as to the *property of another* under section 453.

---

burned his or her own personal property unless there is an intent to defraud or there is injury to another person or another person's structure, forest land, or property."

Section 453 provides in subdivision (a), without any stated limitation there or later in the section on the definition of property: "Every person who possesses, manufactures, or disposes of any flammable, or combustible material or substance, or any incendiary device in an arrangement or preparation, with intent to willfully and maliciously use this material, substance, or device to set fire to or burn any structure, forest land, or property, shall be punished by imprisonment in the state prison, or in a county jail, not exceeding one year."

Limiting arson to burning the property or dwelling of another was a common law tradition initially codified in California (*In re Bramble* (1947) 31 Cal.2d 43, 48–49 [187 P.2d 411]), like the requirement of a willful and malicious act (*In re Stonewall F.* (1989) 208 Cal.App.3d 1054, 1061, fn. 7 [256 Cal.Rptr. 578]), but abandoned by the Legislature after 1929. One could be convicted, for example, of burning a dwelling, " 'whether the property of himself or of another' " (*People v. George* (1941) 42 Cal.App.2d 568, 570–571 [109 P.2d 404] [rejecting equal protection and due process challenges], quoting former § 447a). For 50 years, from 1929 through 1979, all versions of arson as defined in former sections 447a and 448a used that language—"whether the property of himself or of another" (Stats. 1929, ch. 25, §§ 1–2, p. 46; Stats. 1959, ch. 1462, § 1, pp. 3756–3757; Stats. 1966, 1st Ex. Sess., ch. 58, § 1, p. 442; Stats. 1976, ch. 1139, §§ 198–199, pp. 5118–5119; Stats. 1977, ch. 690, § 2, p. 2220; Stats. 1978, ch. 579, §§ 19–20, pp. 1984–1985).

Meanwhile, current section 453's predecessor, former section 452, subdivision (a), was first enacted in 1966 legislation that, like the current version, contained no property-of-others limitation. It stated: "Every person who possesses any flammable, explosive or combustible material or substance, or any device in an arrangement or preparation, with intent to willfully and maliciously use such material, substance or device to set fire to or burn *any buildings or property mentioned in this chapter*, is punishable by imprisonment in the state prison . . . ." (Stats. 1966, 1st Ex. Sess., ch. 58, § 3, pp. 442–443, italics added.) Property mentioned in the arson statutes of the time contained no such limitation, of course, and applied to a defendant burning "the property of himself or of another . . . ."

Today's limitation of arson to the property of others was added in 1979 legislation that repealed former sections 447a and 448a, recast their provisions as new sections 451 (arson) and 452 (unlawfully causing fire through reckless acts), and renumbered former section 452 as current section 453, the one at issue here. (Stats. 1979, ch. 145, §§ 1–17, pp. 337–341.) Each successor arson statute, in language identical aside from exceptions, exempts burning or causing to be burned one's own personal property (§§ 451, subd. (d) [except with intent to defraud or injury to another's property], 452, subd. (d) [except with injury to another's person or property]), as added in the 1979 legislation (Stats. 1979, ch. 145, §§ 1–10, pp. 337–339). Notably, the legislation renumbered former section 452 as new section 453 but *did not* insert such a limitation into it. Further, the legislation replaced the former provision's reference to "any buildings or property mentioned in this chapter" (Stats. 1966, 1st Ex. Sess., ch. 58, § 3, p. 442), with "any structure, forest land or property" (Stats. 1979, ch. 145, § 12, p. 339) and added chapter-wide definitions of the three terms—structure, forest land and property (*id.*, § 6,

p. 338, adding § 450). Those definitions remain unchanged today and contain no restriction to the property of others.[2]

Our task is to give section 453 the meaning expressed, for "[i]f the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history" (*People v. Knowles* (1950) 35 Cal.2d 175, 182–183 [217 P.2d 1]). Morse's argument has no support under those precepts. Section 453 imposes no express limitation on "property" to the property of others, and the chapter definition, which, as here, controls in the absence of a contrary provision in the section (§ 450), provides no such limitation either (*id.*, subds. (a)–(c)). Plus, we have the added circumstance that the Legislature, in the 1979 legislation, after 50 years of abrogating the limitation, reintroduced it into sections 451 and 452 but *did not* introduce it into newly renumbered section 453, part of the same reorganized chapter on arson-type offenses. " ' "[W]hen different language is used in the same connection in different parts of a statute it is presumed the [L]egislature intended a different meaning and effect." ' " (*People v. Moore* (1986) 178 Cal.App.3d 898, 903 [224 Cal.Rptr. 204], quoting *People v. Ector* (1965) 231 Cal.App.2d 619, 625 [42 Cal.Rptr. 388].) Finally, "it should not 'be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234].) For 50 years, the law had imposed no property-of-others limitation on arson crimes generally, and none had been placed in the predecessor incendiary-device statute, first enacted in 1966, 36 years into that time period. No express inclusion of such a limitation appears in the 1979 statute, and none arises by necessary implication.

We reject Morse's reliance on prior attempt convictions under federal law. The effort is strained to begin with, there being no similarity to the question here, and Morse's root premise that section 453 offenses are like attempted arsons fails at the outset. Arson attempts are dealt with expressly in section 455, a section Morse does not even mention. It is also clear from the language of section 453 that the Legislature's concern was not with punishing arson attempts but with deterring the dangerous act of possessing an incendiary device, a danger magnified in this case by having it in the trunk of a car that might be involved in an accident and imperil other persons and property in the vicinity. Nor does the requirement of an intent to willfully and

---

[2] Section 450 provides in pertinent part: "In this chapter [currently §§ 450–457.1], the following terms have the following meanings: [¶] (a) 'Structure' means any building, or commercial or public tent, bridge, tunnel, or powerplant. [¶] (b) 'Forest land' means any brush covered land, cut-over land, forest, grasslands, or woods. [¶] (c) 'Property' means real property or personal property, other than a structure or forest land. [¶] . . . ."

maliciously use the device (see fn. 1, *ante*) render the offense an attempt. The mental state requirement was evidently meant to insulate certain acts of innocent possession and to recognize that one who has an intent to use an incendiary device as an incendiary device is, obviously, more inclined to do so and therefore a greater danger.[3]

 Section 453 does not require an intent to affect the property of another.

## II. –IV.*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·
·

DISPOSITION

The judgment is affirmed.

Haerle, Acting P. J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 9, 2004.

---

[3] Section 450 provides in part: "In this chapter [currently §§ 450–457.1], the following terms have the following meanings: [¶] . . . [¶] (e) 'Maliciously' imports a wish to vex, defraud, annoy, or injure *another person*, or an intent to do a wrongful act, established either by proof or presumption of law." (Italics added; see also § 7, subd. 4.)

One could argue, though Morse does not, that by requiring that the actor intend to affect another person, the definition implies a limitation to the *property* of another. The argument, however, would come too late. The requirement of malicious action existed throughout the 50 years during which the arson statutes expressly covered a defendant's burning of property, "whether the property of himself or of another." While the section 450 definitions did not exist during that time, a definition of "maliciously" was provided in section 7, subdivision 4, that was identical except for the current section's addition of the word "defraud." To imply a requirement of malice toward the property of others obviously would have been irreconcilable with the statutes' express language during that time (see generally *People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134] [literal meaning is not given where doing so results in absurd consequences not intended by Legislature]), and this helps to explain the Supreme Court's recent observation that arson's malice requirement only ensures that the act is done with a design to do an intentional wrongful act, without legal justification, excuse or claim of right. (*Atkins, supra,* 25 Cal.4th at p. 88.) That construction is also consistent with the definition's alternative phrasing, "or an intent to do a wrongful act . . . ." (§§ 7, subd. 4, 450, subd. (e); *In re Stonewall F., supra,* 208 Cal.App.3d at p. 1065.)

*See footnote, *ante,* page 1160.