[No. B170163. Second Dist., Div. One. June 28, 2005.]

SCOTTSDALE INSURANCE COMPANY, Plaintiff, Cross-defendant and Appellant, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant, Cross-complainant and Respondent;
COMMERCIAL UNDERWRITERS INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Selman•Breitman, Alan B. Yuter and Rachel E. Hobbs for Plaintiff, Cross-defendant and Appellant.

Knapp, Petersen & Clarke, Peter J. Senuty, Mara L. Weber and Barry R. Gammell for Defendant, Cross-complainant and Respondent.

Lewis Brisbois Bisgaard & Smith, Michael R. Velladao and Jeffry A. Miller for Defendant and Respondent.

## OPINION

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff and cross-defendant Scottsdale Insurance Company (Scottsdale) appeals from a judgment entered in favor of defendant and cross-complainant State Farm Mutual Automobile Insurance Company (State Farm) and defendant Commercial Underwriters Insurance Company (CUIC) after the trial court granted their motions for summary judgment. We conclude the trial court erred in granting the summary judgment and therefore reverse the judgment.

### FACTS

This case arises out of an accident that occurred on July 31, 1998. Miguel Llamas (Llamas), an employee of VCP Cable Construction, Inc., was injured when the bucket of a "cherry picker" in which he was riding fell. J.M.S.D. Telecommunications, Inc. (JMSD) owned the cherry picker and the truck to

which it was attached. Llamas filed suit on July 30, 1999, naming JMSD as a defendant by amendment filed on January 24, 2000 (Llamas action).

Scottsdale issued a commercial general liability policy to JMSD. The policy had a liability limit of $1 million per occurrence. It was in effect on July 31, 1998.

Scottsdale also issued an excess commercial general liability policy to JMSD. This policy had a $3 million liability limit per occurrence. It was also in effect on July 31, 1998.

State Farm issued an automobile liability insurance policy to JMSD. This policy had a liability limit of $1 million per occurrence. It was in effect on July 31, 1998. It identified the truck involved in the accident in its schedule of insured vehicles.

CUIC issued an excess automobile liability policy to JMSD. The policy provided a $2 million liability limit per occurrence and was in effect on July 31, 1998. It identified the truck involved in the accident in its designated vehicles endorsement.

The Llamas action settled for $1.375 million. Of this amount, Scottsdale paid $620,000 and State Farm paid $655,000. CUIC paid nothing.

## PROCEDURAL BACKGROUND

Scottsdale filed this action for declaratory relief and indemnification against State Farm and CUIC on September 28, 2001. It sought a declaration as to the parties' obligations and indemnification for the amounts it expended in defense of JMSD in the Llamas action.[1] State Farm filed a cross-complaint for declaratory relief and indemnification against Scottsdale on November 14, 2001. It sought a declaration that it had no duty to indemnify JMSD in the Llamas action and indemnification from Scottsdale as to the amounts it already had expended in defense of the action.

Scottsdale filed a motion for summary judgment on January 10, 2003. It sought judgment against both State Farm and CUIC on the ground their policies were primary and covered the accident.

CUIC filed its own motion for summary judgment or, in the alternative, summary adjudication on January 10, 2003. It sought either a summary

---

[1] Scottsdale later dismissed its cause of action against State Farm for defense costs.

judgment or an adjudication that it was an excess insurer and owed no duty to defend JMSD or to reimburse Scottsdale.

Also on January 10, 2003, State Farm filed a motion for summary adjudication. It sought adjudication of a number of causes of action in Scottsdale's complaint and its own cross-complaint.

The trial court issued a tentative ruling granting CUIC's and State Farm's summary judgment motions. It ruled that the Scottsdale commercial policy covered the accident and was a primary policy. The State Farm policy provided primary coverage, but the accident was not covered under that policy. The court explained that Llamas was an insured under the policy. The accident therefore fell within a policy exclusion for bodily injury to an insured. The CUIC policy provided excess coverage. Inasmuch as there was no liability under the State Farm policy, there was none under the CUIC policy. The court ordered that Scottsdale take nothing on its complaint and that State Farm recover $655,000 from Scottsdale on State Farm's cross-complaint.

## CONTENTIONS

Scottsdale contends that under the prevailing law, the trial court erred in finding that State Farm's exclusion for bodily injury to any insured applied to bar coverage for Llamas's injuries under the State Farm policy. We agree. Under Insurance Code section 11580.06, subdivisions (f) and (g), Llamas was not an insured under the policy.

Scottsdale additionally contends that Insurance Code section 11580.9, subdivision (d), should have been applied here to render the State Farm and CUIC insurance policies primary to its own. We disagree. This section does not apply to the Scottsdale policy.

Finally, Scottsdale contends that even if Insurance Code section 11580.9, subdivision (d), did not create a conclusive presumption that State Farm's and CUIC's policies were primary, Scottsdale's excess other insurance provision would yield this same result. We do not resolve this question but leave it for the trial court on remand.

## DISCUSSION

*Applicability of the State Farm Policy*

The trial court found the accident was not covered under the State Farm policy, in that Llamas was an insured under the policy. The accident therefore

fell within a policy exclusion for bodily injury to an insured. Scottsdale's first contention is that this finding was erroneous as a matter of law.

■ In the absence of conflicting extrinsic evidence, interpretation of an insurance policy is a question of law which may be resolved by the court on summary judgment. (*Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1354 [270 Cal.Rptr. 779]; *Pepper Industries, Inc. v. Home Ins. Co.* (1977) 67 Cal.App.3d 1012, 1018 [134 Cal.Rptr. 904].) On appeal, we independently determine the meaning of the policy. (*Pacific Employers Ins. Co., supra*, at p. 1354.)

The State Farm policy provides that State Farm will "pay damages which an *insured* becomes legally liable to pay because of: [¶] (a) *bodily injury* to others . . . [¶] caused by accident resulting from the ownership, maintenance or use of *your car* . . . ." (Par. 1, SECTION I—LIABILITY—COVERAGE A.) The policy's definition of "insured" includes "any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*; and [¶] . . . any other *person* or organization liable for the use of such a *car* by one of the above *insureds*." (Pars. 4, 5, Who Is an Insured.) The policy provides no coverage "FOR *BODILY INJURY* TO: [¶] . . . [¶] b. ANY OTHER *INSURED* UNDER THE POLICY." (Par. 6, When Coverage A Does Not Apply.)

Scottsdale's challenge to the trial court's finding that Llamas was an insured and therefore not covered under the State Farm policy is threefold. First, it claims the finding "does not comport with the Legislature's intent to protect the public from the negligence of permissive drivers." Second, it claims the State Farm policy is ambiguous, at best, as to the meaning of "use." Inasmuch as there is a question as to whether Llamas was using the insured vehicle within the meaning of the policy, the trial court was obligated to construe the policy in favor of coverage. Finally, it claims the trial court erred in refusing to apply Insurance Code section 11580.06, which is dispositive as to the meaning of "use" for the purpose of determining who is a permissive user of an insured vehicle and thus an insured under the policy.

We turn first to Scottsdale's final claim. If Insurance Code section 11580.06[2] is indeed dispositive, then we need not address any of Scottsdale's other claims.

Section 11580.06 provides definitions applicable to liability insurance policies. Subdivision (g) provides: "The term 'use' when applied to a motor vehicle shall only mean operating, maintaining, loading, or unloading a motor

---

[2] All further section references are to the Insurance Code.

vehicle." Subdivision (f) provides: "The term 'operated by' or 'when operating' shall be conclusively presumed to describe the conduct of the person sitting immediately behind the steering controls of the motor vehicle. The person shall be conclusively presumed to be the sole operator of the motor vehicle."

■ Courts have applied the foregoing provisions, without analysis, to a determination of who is a permissive user of a vehicle under an automobile liability policy. (*State Farm Mutual Automobile Ins. Co. v. Grisham* (2004) 122 Cal.App.4th 563, 568 [18 Cal.Rptr.3d 809]; *City of San Buenaventura v. Allianz Ins. Co.* (1992) 9 Cal.App.4th 402, 405 [11 Cal.Rptr.2d 742]; *National Union Fire Ins. v. Showa Shipping Co.* (9th Cir. 1995) 47 F.3d 316, 321.) State Farm argues that the provisions do not apply to limit coverage for permissive use. Subdivision (g) of section 11580.06 merely codifies existing law as to permissive use, and subdivision (f) does not apply. In support of this argument, State Farm relies on other sections of the Insurance Code in which the defined terms are found.

■ Section 11580.1 sets forth the required and optional provisions of an automobile liability insurance policy. Subdivision (b)(4) requires that the policy contain a "[p]rovision affording insurance to the named insured . . . , and to the same extent that insurance is afforded to the named insured, to any other person using the motor vehicle, provided the use is by the named insured or with his or her permission, express or implied, and within the scope of that permission . . . ." While this subdivision refers to "use," it does not contain the terms "operated by" or "when operating," defined in subdivision (g) of section 11580.06.

The term "operated by" appears elsewhere in section 11580.1. Subdivision (c)(6) provides that the liability insurance may "be made inapplicable to" "[l]iability for damage to property owned, rented to, transported by, or in the charge of, an insured. A motor vehicle *operated by* an insured shall be considered to be property in the charge of an insured." (Italics added.) Subdivision (d)(1) provides that the insurer and the insured can agree "[t]hat coverage and the insurer's obligation to defend under the policy shall not apply nor accrue to the benefit of any insured or any third-party claimant while any motor vehicle is being used or *operated by* a natural person or persons designated by name. These limitations shall apply to any use or operation of a motor vehicle, including the negligent . . . entrustment of a motor vehicle to that designated person or persons. . . ." (Italics added.)

The term "operated by" also appears in section 11580.2, which applies to uninsured and underinsured motorist coverage. (*Id.* subds. (a)(1), (2), (3), (b).) It appears in section 11580.26, subdivision (c), allowing a named

insured to waive certain coverage "when a motor vehicle is used or *operated by* a person or persons designated by name." (Italics added.)

The term "when operating" no longer appears in the motor vehicle coverage provisions. It has been replaced by "operated by" in section 11580.1.

As we see it, there are two possible interpretations of the foregoing provisions. The first, urged by State Farm, is that section 11580.06, subdivision (f), applies only when the term "operated by" or the term "when operating" appears in the code. It does not apply to "operating" or "operation." Thus, "operating . . . a motor vehicle," which constitutes "use" of a motor vehicle within the meaning of subdivision (g) of section 11580.06, is not "conclusively presumed to describe the conduct of the person sitting immediately behind the steering controls of the motor vehicle," and that person is not "conclusively presumed to be the sole operator of the motor vehicle." (*Id.*, subd. (f).)

The second, supported by Scottsdale, is that subdivision (f) of section 11580.06 defines what constitutes the operation of a motor vehicle. It does not apply only to the precise terms set forth in that subdivision. It thus applies to define "operating . . . a motor vehicle," which constitutes "use" of a motor vehicle within the meaning of section 11580.06, subdivision (g).

■ In the construction of statutes, our primary goal is to ascertain and give effect to the intent of the Legislature. (Code Civ. Proc., § 1859; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) We look first to the language of the statute; if clear and unambiguous, we will give effect to its plain meaning. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 208–209 [271 Cal.Rptr. 191, 793 P.2d 524]; accord, *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].) We give the words used their usual, ordinary meanings and, if possible, we accord significance to each word and phrase. (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; accord, *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We must construe the language in context and must harmonize statutes, "both internally and with each other, to the extent possible." (*California Mfrs. Assn. v. Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836]; accord, *Lungren, supra*, at p. 735.) Literal construction of the statute will not prevail, however, if "contrary to the legislative intent apparent in the statute." (*Ibid.*; accord, *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) In addition, we must give the statute a reasonable interpretation, avoiding, if possible, a literal interpretation which will lead to

an absurd result. (*Verreos v. City and County of San Francisco* (1976) 63 Cal.App.3d 86, 96 [133 Cal.Rptr. 649].)

■ In our view, the most reasonable interpretation of the statutes at issue is that the definition provided in section 11580.06, subdivision (f), of "[t]he term 'operated by' or 'when operating' " applies to all the various forms of "operate" contained within the article applying to automobile liability insurance. It is not reasonable to assume the Legislature meant something different by "when operating" than by "operating," or that the "operation" of a vehicle is different than a vehicle being "operated by" a person. For example, in section 11580.1, subdivision (d)(1), the Legislature provided that the insurer and the insured can agree "[t]hat coverage and the insurer's obligation to defend under the policy shall not apply nor accrue to the benefit of any insured or any third-party claimant while any motor vehicle is being used or *operated by* a natural person or persons designated by name. These limitations shall apply to any use or *operation* of a motor vehicle, including the negligent . . . entrustment of a motor vehicle to that designated person or persons. . . ." (Italics added.) The only reasonable interpretation of this provision is that "operated by" and "operation" have the same meaning.

As a rule, "unless a contrary intent appears," we presume the Legislature intended that we accord the same meaning to similar phrases. (*People v. Wells* (1996) 12 Cal.4th 979, 986 [50 Cal.Rptr.2d 699, 911 P.2d 1374].) Similarly, if a word or phrase has a particular meaning in one part of a law, we give it the same meaning in other parts of the law. (*Albillo v. Intermodal Container Services, Inc.* (2003) 114 Cal.App.4th 190, 205 [8 Cal.Rptr.3d 350]; *Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1507 [1 Cal.Rptr.3d 207].) We see no indication of a contrary legislative intent here. Accordingly, we interpret section 11580.06, subdivision (f), to apply to the various forms of the term "operate" found within the article on automobile liability insurance. It thus applies to subdivision (g) of that section, defining "use" of a motor vehicle to include "operating . . . a motor vehicle."

Under the State Farm policy, Llamas was an insured if he was "any other *person* while using such a *car* if its use is within the scope of consent of *you* or *your spouse*," i.e., if he was using the insured truck. As a matter of law, he was using the insured truck if he was "operating, maintaining, loading, or unloading" it. (§ 11580.06, subd. (g).) He was operating it if he was "sitting immediately behind the steering controls of the" truck. (*Id.*, subd. (f).) He was not. He was in the cherry picker attached to the truck.

State Farm argues that even if section 11580.06 applies here, "Llamas was 'operating' the attached cherry picker by the use of its controls; [and] 'operating' the truck by directing its starting, stopping, and movements in

order to perform his work." The trial court apparently accepted this argument. It found no indication that section 11580.06 was intended to apply to vehicles with more than one set of controls. It also found that Llamas's actions constituted "use" of the truck under *National American Ins. Co. v. Insurance Co. of North America* (1977) 74 Cal.App.3d 565 [140 Cal.Rptr. 828]. In *National American Ins. Co.*, a passenger tossed an egg out of a car and injured a pedestrian. The court held that constituted use of the vehicle, in that there was a causal connection between the vehicle and the occurrence causing the injury. (*Id.*, at p. 571.)

We disagree with the trial court's findings. First, there is no evidence the truck had more than one set of "steering controls." Second, subdivisions (f) and (g) were added to section 11580.06 after the decision in *National American Ins. Co.* (Stats. 1982, ch. 1136, § 4, p. 1621; Stats. 1984, ch. 341, § 3, p. 4089.) When the Legislature enacts a statute, we deem it to have been aware of statutes already in effect and of judicial decisions interpreting them and to have enacted the statute in light of them. (*People v. Hernandez* (1988) 46 Cal.3d 194, 201 [249 Cal.Rptr. 850, 757 P.2d 1013], disapproved on another ground in *People v. King* (1993) 5 Cal.4th 59, 78, fn. 5 [19 Cal.Rptr.2d 233, 851 P.2d 27]; *People v. Quintana* (2001) 89 Cal.App.4th 1362, 1368 [108 Cal.Rptr.2d 235].) Where the language of the enactment expresses or necessarily implies an intention to overturn prior law, we will presume that this was the Legislature's intent. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 [96 Cal.Rptr.2d 463, 999 P.2d 686]; *People v. Morse* (2004) 116 Cal.App.4th 1160, 1165 [11 Cal.Rptr.3d 9].) Additionally, we "assume from a new enactment a purpose to change existing law." (*In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].) It is clear from the enactment of subdivisions (f) and (g) of section 11580.06 that the Legislature intended to overturn the prior judicial decisions defining "use" for purposes of automobile liability insurance policies and to define the term more narrowly.

The legislative history of these subdivisions, which we may examine in interpreting the statute (*California Mfrs. Assn. v. Public Utilities Com.*, *supra*, 24 Cal.3d at p. 844), supports this conclusion. The Department of Insurance's September 14, 1982 Enrolled Bill Report on Senate Bill No. 1935, by which subdivision (f) was added to section 11580.06, states that "the bill would include in the Insurance Code, for purposes of the liability insurance provisions of the code, a definition of 'operated by' and 'when operating,' to place a conclusive presumption that it describes the conduct of the person sitting immediately behind the steering controls of the motor vehicle."

Assembly Bill No. 3529 added subdivision (g) to section 11580.06 and added the second sentence to subdivision (f). One purpose for these amendments was to provide that "the insurer would escape liability from suit in the

specific instance where any individual passenger of a vehicle attempted to control the steering wheel in order to assist the driver who, for whatever reason, was incapacitated." (Assem. Com. on Finance and Insurance, com. on Assem. Bill No. 3529 (1983–1984 Reg. Sess.) as amended May 3, 1984.) Additionally, while the term "use" "is employed often in policy language and defined therein no such definition appears in statute though the policy definition controls several statutorily required coverages." (Sen. Insurance, Claims and Corporations Com., com. on Assem. Bill No. 3529 (1983–1984 Reg. Sess.) as amended May 16, 1984; Sen. Democratic Caucus, consent to Assem. Bill No. 3529 (1983–1984 Reg. Sess.) as amended May 16, 1984; Sen. Republican Caucus, consent to Assem. Bill No. 3529 (1983–1984 Reg. Sess.) as amended May 16, 1984.)

The Enrolled Bill Report on Assembly Bill No. 3529 prepared by the Department of Insurance of the Business, Transportation and Housing Agency adds: "This bill is comprised of amendments which are generally technical in nature, and stem either from the urge to clarify existing law, or to counteract the effect of court cases which were adverse to the insurance industry. The result of this bill should be a more stable automobile insurance market."

The Legislative Counsel's Digest of Assembly Bill No. 3529 notes that the bill would "provide that the person [sitting immediately behind the steering controls of the motor vehicle] shall be conclusively presumed to be the sole operator of the motor vehicle. It would also define the term 'use' when applied to a motor vehicle as only meaning operating, maintaining, loading, or unloading of the vehicle." In a letter to then Governor Deukmejian urging him to sign Assembly Bill No. 3529 from the sponsor of the bill, Assemblyman Bruce Young, Assemblyman Young notes that the bill "provides a clear definition of the term 'use,' as respects a motor vehicle, to minimize disputes over when an automobile insurance policy will apply." Assemblyman Young also points out that "the bill provides that the person sitting immediately behind the steering controls of the motor vehicle shall be conclusively presumed to be the sole operator of the motor vehicle. This is necessary to determine who is the insured under the policy."

The foregoing documents reinforce our conclusion that in enacting subdivisions (f) and (g) of section 11580.06, the Legislature intended to overturn the prior judicial decisions defining "use" for purposes of automobile liability insurance policies and to provide a statutory definition of that term. According to that statutory definition, Llamas was not operating the truck to which the cherry picker was attached. He thus was not using it by operating it.

State Farm next argues that Llamas was " 'unloading' coaxial cable from the truck and cherry picker as he was stringing the cable." This is an argument State Farm did not raise below. It consequently cannot serve as a

basis for upholding the summary judgment. (*Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 842 [71 Cal.Rptr.2d 817].)

In summary, Llamas was not an insured under the State Farm policy, in that he was not using the truck within the meaning of section 11580.06, subdivisions (f) and (g). The trial court therefore erred in granting summary judgment to State Farm on the ground Llamas was an insured under the State Farm policy. (Code Civ. Proc., § 437c, subds. (c), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

*Section 11580.9, Subdivision (d)*

■    Section 11580.9, subdivision (d), provides: "[W]here two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess." The Legislature enacted section 11580.9 to provide consistency in the allocation of loss between coinsurers. (*Travelers Indemnity Co. v. Maryland Casualty Co.* (1996) 41 Cal.App.4th 1538, 1543 [49 Cal.Rptr.2d 271].) Subdivision (d) of section 11580.9 provides a conclusive presumption that the policy which describes the motor vehicle involved in the accident as an owned automobile is the primary policy. (*Travelers Indemnity,* at pp. 1544–1545.)[3]

Subdivision (d) of section 11580.9 does not specify that it applies only to automobile liability insurance policies; it states that it applies to "two or more policies affording valid and collectible liability insurance [that] apply to the same motor vehicle." Subdivision (a), by contrast, applies to "two or more policies affording valid and collectible automobile liability insurance." We presume the Legislature intended different meanings when it used different words in the two subdivisions. (*Las Virgenes Mun. Wat. Dist. v. Dorgelo* (1984) 154 Cal.App.3d 481, 486 [201 Cal.Rptr. 266].) Subdivision (d) thus is not limited to automobile liability insurance policies.

*National American Ins. Co. v. Insurance Co. of North America, supra,* 74 Cal.App.3d 565, on which Scottsdale relies, involved a dispute over coverage between two insurers, one of whom had issued an automobile liability

---

[3] The trial court did not reach the question whether section 11580.9 applied to resolve the instant coverage dispute based on its finding that the State Farm policy did not provide coverage.

insurance policy and the other of whom had issued a homeowner's liability insurance policy. (*Id.,* at p. 569.) Both policies covered the automobile involved in the incident. (*Id.,* at pp. 574, 575.) In resolving the question of which policy provided primary coverage, the court noted the applicability of section 11580.9 and the fact the automobile involved in the incident was described in the automobile liability insurance policy. (*National American,* at p. 575.)

*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285 [260 Cal.Rptr. 190], on which State Farm relies, involved four insurance policies: Hartford automobile and umbrella insurance policies issued to the owner of the automobile involved in the accident, and automobile and umbrella insurance policies issued to the father of the victim, who was driving the automobile with the owner's permission. (*Id.,* at p. 1291.) The court applied section 11580.9, subdivision (d), to the two automobile insurance policies, finding that the Hartford automobile insurance policy issued to the owner of the automobile, which described the automobile, was primary to the other automobile insurance policy. (*Hartford,* at pp. 1297–1298, 1302.)

In discussing the Hartford umbrella policy within the context of a claim that it described the automobile involved in the accident by virtue of its reference to the underlying automobile liability insurance policy, the court observed: "[T]he Hartford Umbrella policy is a general umbrella . . . policy insuring the persons insured for all types of 'bodily injury, personal injury, property damage and advertising liability' subject to certain exclusions. There is no general exclusion for automobile coverage. . . . In other words, the Hartford Umbrella policy does not insure any automobiles at all. It insures people, including those who permissibly use [the] 'owned' automobiles." (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., supra,* 211 Cal.App.3d at p. 1301.) The court later stated that the priority of the Hartford umbrella and other umbrella policy was "not governed by section 11580.9, subdivision (d)." (*Id.,* at p. 1302.) Rather, other established rules for determining priority of liability applied. (*Id.,* at pp. 1302–1303.)

The two cases relied upon by the parties are not inconsistent. In determining whether section 11580.9, subdivision (d), applies, the deciding factor is not the type of policy involved but whether it affords valid and collectible liability insurance that applies to the motor vehicle involved in the accident. If so, as with the homeowner's liability insurance policy in *National American Ins. Co.,* the section applies. If not, as with the umbrella policies in *Hartford Accident & Indemnity Co.,* the section does not apply.

If, then, the Scottsdale policy affords valid and collectible liability insurance for the truck involved in the incident here, section 11580.9, subdivision (d), applies. Scottsdale admits its policy "is not designed to provide auto-related coverage and . . . in fact generally excludes such coverage." The policy excludes liability for "[b]odily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . ." (Section I—Coverages, par. 2.g., Exclusions; Aircraft, Auto or Watercraft.) The foregoing exclusion "does not apply to" " '[b]odily injury' or 'property damage' arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the 'definition of mobile equipment'." (*Id.*, par. 2.g.(5).) Paragraph f.(2) lists "[c]herry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers."

These provisions make it clear that the Scottsdale policy does not provide liability insurance for the truck involved in the incident. It provides liability insurance for the cherry picker mounted on the truck. Section 11580.9 thus does not apply to determine priority between Scottsdale's policy and the State Farm and CUIC policies, which are automobile liability insurance policies and describe the truck. (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., supra,* 211 Cal.App.3d at pp. 1302–1303.)

*Priority of Insurance Coverage*

■   Scottsdale claims that, even if section 11580.9, subdivision (d), does not apply, its insurance coverage is secondary to that of State Farm and CUIC by virtue of its excess other insurance provision. The determinations of whether an insurance policy provides primary or excess coverage and of the priority of liability of policies not governed by section 11580.9 are governed by well established rules. (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., supra,* 211 Cal.App.3d at pp. 1302–1303.) In applying these rules, the courts examine the provisions of all policies involved. An excess other insurance provision will be examined to determine whether it is a true excess insurance provision. (*Pacific Indemnity Co. v. Bellefonte Ins. Co.* (2000) 80 Cal.App.4th 1226 [95 Cal.Rptr.2d 911].) Even if excess, liability may be prorated where the other policies involved also provide excess coverage. (*Century Surety Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246, 1256–1258 [135 Cal.Rptr.2d 879].) The court may examine the equities involved before making its determinations. (*Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.* (1999) 75 Cal.App.4th 739, 749 [89 Cal.Rptr.2d 415].)

We are remanding the case to allow the trial court to resolve the parties' motions for summary judgment and adjudication in light of our holdings herein. On remand, the trial court must apply the applicable rules in making its determinations as to priority of coverage.

We reverse the judgment. We direct the trial court to vacate the order granting State Farm's and CUIC's motions for summary adjudication and judgment and to reconsider the parties' summary judgment and adjudication motions in light of our holdings herein. The parties are to bear their own costs on appeal.

Mallano, J., and Rothschild, J., concurred.

A petition for a rehearing was denied July 26, 2005, and the opinion was modified to read as printed above. The petition of respondent Commercial Underwriters Insurance Company for review by the Supreme Court was denied October 12, 2005.