(Reposted with correct lower court information)

# IN THE SUPREME COURT OF CALIFORNIA

In re H.W., a Person Coming Under the Juvenile Court Law.

---

THE PEOPLE,
Plaintiff and Respondent,
v.
H.W.,
Defendant and Appellant.

S237415

Third Appellate District
C079926

Sacramento County Superior Court
JV137101

---

March 28, 2019

Justice Cuéllar authored the opinion of the court, in which
Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu,
Kruger, and Groban concurred.

---

IN RE H.W.

S237415


Opinion of the Court by Cuellar, J.


California law punishes not only familiar offenses such as unlawfully breaking or entering into a building, but the possession of certain physical tools — a crowbar, for example, a pair of vise grip pliers, or some "other instrument or tool" — with the intent "feloniously to break or enter" into a building or vehicle. (Pen. Code, § 466.) Yet the Courts of Appeal have reached conflicting conclusions about the kinds of tools encompassed by the phrase "other instrument or tool" in Penal Code section 466,[1] and the intent required to trigger criminal liability under the statute. We granted review to resolve the conflict.

H.W. was a minor who entered a Sears department store in Yuba City, California, with the intent to steal a pair of jeans. When he was apprehended, he was in possession not only of the stolen jeans but a pair of pliers approximately ten inches in length, with a half-inch blade. The juvenile court sustained the burglary tool possession allegation filed against H.W., whom the court then designated a ward and placed on juvenile probation. He contends the pliers are not an "other instrument or tool" under section 466.

---

[1] Unless otherwise specified, all further statutory references are to the Penal Code.

What we conclude is that criminal liability under section 466 requires not only possession of a given "instrument or tool" encompassed by the statute, but an intent to use it to break into or otherwise effectuate physical entry into a structure in order to commit theft or some other felony within the structure. So we reverse the Court of Appeal's judgment upholding the juvenile court's finding that H.W. possessed an "other instrument or tool with intent feloniously to break or enter" within the meaning of section 466.

## I.

In April 2015, the Sacramento County District Attorney filed a petition under Welfare and Institutions Code section 602 seeking to declare minor H.W. a ward of the court. The petition alleged that on October 13, 2014, H.W. committed theft (Pen. Code, § 484, subd. (a)) and possession of burglary tools (§ 466).[2] H.W. denied the allegations in the petition, and a contested jurisdictional hearing was held on July 1, 2015.

Loss prevention agent Marcus Nealy testified that on October 13, 2014, he was watching the Yuba City Sears sales floor via the store's closed-circuit surveillance system. Nealy saw H.W. enter the store "with a backpack that looked empty" and saw H.W. "looking around very suspiciously." Nealy and loss prevention manager Stephanie Garza communicated by cell phone while continuing to monitor the sales floor. Garza told Nealy that H.W. had a pair of pliers and used them to remove an anti-theft tag from a pair of jeans. Nealy testified the anti-

---

[2] The petition also alleged that minor H.W. committed trespass (§ 602.5) in a separate incident on January 24, 2015. The juvenile court found the trespass allegation had not been proven beyond a reasonable doubt.

theft tag sprays ink if released by force but can be removed by using a tool to cut the pin that locks into the tag. Nealy observed H.W. enter the restroom with the jeans but did not see the jeans when H.W. exited the restroom, so Nealy checked the restroom for the jeans but did not find them. Garza then alerted Nealy that H.W. was exiting the store. H.W. did not stop at any of the cash registers, nor did he otherwise attempt to pay for the jeans. Nealy stopped H.W. once he exited the store and escorted him back inside to the loss prevention office. The police were then called.

When Yuba City Police Officer Joshua Jackson arrived, Nealy and Garza explained that H.W. had used pliers to remove an anti-theft tag from a pair of jeans, which he then put into his backpack and exited the store without paying for the jeans. Officer Jackson testified that "[p]liers are commonly used as a tool to remove tags from clothing items that have a metal pin-type securing device that cannot be broken or cut with, say, a knife." Officer Jackson searched H.W. and found that he had no wallet, money, or identifying items on his person.

H.W. denied all the allegations in the petition and did not testify on his own behalf before the juvenile court. The juvenile court sustained the theft and burglary tool possession allegations. H.W. was adjudged a ward of the juvenile court and placed on juvenile probation.

On appeal, H.W. challenged the juvenile court's finding that he possessed a burglary tool within the meaning of section 466. He also argued that there was insufficient evidence to support the finding that he possessed the pliers with the felonious intent to commit a burglary. In his appellate brief, H.W. argued that he "possessed the pliers with the intent to

commit misdemeanor theft – not burglary." H.W. asserted that there was no related evidence to support an inference that he possessed the pliers with a "burglarious purpose" and no evidence linking him to an actual burglary.

The Court of Appeal disagreed with H.W. It concluded the pliers were an "other instrument or tool" for the purposes of section 466 and the possession of a burglary tool allegation was properly sustained. (*In re H.W.* (2016) 2 Cal.App.5th 937, 945) (*H.W.*).) The court expressed its agreement with the First District decision in *People v. Kelly* (2007) 154 Cal.App.4th 961, finding that the only meaning of "other instrument or tool" that fulfills the purpose of section 466 includes tools that the evidence shows are possessed with the intent to be used for burglary. (*H.W., at p. 944.*) It explained how this interpretation is consistent with the purpose of the statute, which is to prevent the substantive crime, regardless of whether the tool at issue is used to gain entry to the building or to complete the underlying theft. (*Ibid.*)

In reaching its conclusion, the court expressly disagreed with two Fourth District decisions, *People v. Diaz* (2012) 207 Cal.App.4th 396 and *People v. Gordon* (2001) 90 Cal.App.4th 1409, superseded by statute, as noted in *Kelly*, 154 Cal.App.4th at p. 966. The court explained that an interpretation of section 466 limited to items specifically made for breaking, entering, or gaining access to a victim's property is overly narrow and inconsistent with the statutory language. (*H.W., supra,* at p. 944.) According to the appellate court, finding a statutory requirement that the tool be used for "breaking" imposes a limitation on liability eliminated from the crime of burglary long ago, and that under California law a person may be convicted of

burglary if he or she enters a store while it is open to the general public with the intent to commit theft or a felony. (*Id.* at p. 945.)

The court reasoned that H.W. did just that: possessed and used the pliers for the purpose of committing a theft inside of Sears. Citing the evidence provided to the juvenile court that H.W. used the pliers to remove the anti-theft tag from the jeans, placed the jeans in his backpack, left the store without paying for the jeans, and was apprehended with no credit cards, money, or other means to pay for the jeans, the court concluded that H.W. used the pliers for the " ' "burglarious purpose" ' " of stealing the jeans. (*H.W., supra*, 2 Cal.App.5th at p. 945*,* quoting *People v. Southard* (2007) 152 Cal.App.4th 1079, 1088.) So the appellate court upheld the juvenile court's determination, finding there was sufficient evidence to sustain the possession of burglary tools allegation. (*H.W.,* at p. 945.)

H.W. challenges the Court of Appeal's determination that the pliers in his possession were an "other instrument or tool" within the scope of section 466.

## II.

The pliers in question are approximately ten inches in total length, with a sharpened, approximately half-inch long blade. We consider whether these pliers fall within the scope of section 466 as an "other instrument or tool" and whether they were possessed by H.W. with the intent necessary to establish criminal liability under the statute. (§ 466.)

When we interpret statutes, our primary task is to determine and give effect to the Legislature's purpose in enacting the law. (*People v. Hubbard* (2016) 63 Cal.4th 378, 386; *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332 ["In interpreting a statute, our primary goal is to determine and give

effect to the underlying purpose of the law"].) We first look to the words of the statute, as they are generally the most reliable indicators of the legislation's purpose. (*Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 128; *People v. Cottle* (2006) 39 Cal.4th 246, 254.) To further our understanding of the intended legislative purpose, we consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme. (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157.) If the relevant statutory language is ambiguous we may glean further insight from appropriate extrinsic sources, including the legislative history. (*People v. Romanowski* (2017) 2 Cal.5th 903, 909; *People v. Zambia* (2011) 51 Cal.4th 965, 972.)

Originally enacted in 1850, the provision that became section 466 has been amended multiple times, most recently in 2008. (Stats. 2008, ch. 119, § 1, p. 330.) The resulting provision incorporates a mix of terms that range from straightforward to opaque in a paragraph-long sentence devoid of any explicit statutory subdivisions and addressing several related problems involving tools that could facilitate felonies or misdemeanors. It reads as follows: "Every person having upon him or her in his or her possession a picklock, crow, keybit, crowbar, screwdriver, vise grip pliers, water-pump pliers, slidehammer, slim jim, tension bar, lock pick gun, tubular lock pick, bump key, floor-safe door puller, master key, ceramic or porcelain spark plug chips or pieces, or other instrument or tool with intent feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle as defined in the Vehicle Code, or who shall knowingly make or alter, or shall attempt to make or alter, any key or other instrument named above so that the same will fit or open the lock of a building,

railroad car, aircraft, vessel, trailer coach, or vehicle as defined in the Vehicle Code, without being requested to do so by some person having the right to open the same, or who shall make, alter, or repair any instrument or thing, knowing or having reason to believe that it is intended to be used in committing a misdemeanor or felony, is guilty of a misdemeanor. Any of the structures mentioned in Section 459 shall be deemed to be a building within the meaning of this section." (§ 466.)

H.W. points out that pliers such as those in his possession are not expressly listed in the statute. Shoehorning them into the statute by treating them as an "other instrument or tool," he contends, makes little sense given the explicit inclusion of only vise grip and water-pump pliers. H.W. cites the amendments to section 466 in 1984 (adding vise grip pliers, water-pump pliers, screwdriver, slidehammer, slim jim, tension bar, lock pick gun, floor-safe door puller, and master key), 2001 (correcting the spelling of "vise grip pliers"), 2002 (including ceramic or porcelain spark plug chips or pieces), and 2008 (adding bump key) as instances where the Legislature could have easily incorporated generic pliers but did not. (Stats. 1984, ch. 82, § 1, p. 282; Stats. 2001, ch. 854, § 28, pp. 6992-6993; Stats. 2002, ch. 335, § 1, p. 1298; Stats. 2008, ch. 119, § 1, pp. 330-331.)

H.W. also contends that section 466's "other instrument or tool" provision must be read narrowly. Citing the *ejusdem generis* principle of statutory interpretation, H.W. argues that the general reference to other instruments or tools only encompasses items similar — which he defines as those tools designed for breaking or entering — to the enumerated tools, such as screwdrivers and lock pick guns. He claims that the pliers he possessed cannot be considered an "other instrument

7

or tool" because they are dissimilar to the objects listed in the statute.  (§ 466.)

The People counter that the Legislature decided to include items beyond those specifically listed by enacting a broadly worded provision that could reasonably be read to include the pliers in question here.  Moreover, H.W.'s assessment of what makes the enumerated tools similar may be overly narrow. Devices like a screwdriver, vise grip pliers, water-pump pliers, crow, or crowbar may be useful to break a lock or forcibly enter a gate or door.  But they may also be used to unscrew, pry, or release property that is bolted down or otherwise secured.  And as H.W.'s counsel clarified at oral argument, a master key, lock pick gun, and picklock are as useful to pick or force a lock securing exterior entry into a building as they are to pick a lock on a container or partition located within a building or store. The enumerated tools are varied in their function and capabilities.  And to the extent there is a common thread between them, it is that they are meant to defeat efforts to secure property.

Nonetheless, even if we assume the People are right to treat the pliers in H.W.'s possession as an "other instrument or tool," the question of H.W.'s intent proves pivotal in this case.  A statutory requirement limiting imposition of criminal liability to individuals with the requisite criminal intent functions as a crucial constraint on the imposition of criminal liability in most penal statutes.  (See e.g., *People v. Morse* (2004) 116 Cal.App.4th 1160, 1166 [the mental state requirement is "meant to insulate certain acts of innocent possession" from criminal possession].) To understand its scope here, we must interpret the statute in context.

Here is the subjective offense element on which section 466 conditions criminal liability when an individual possesses certain enumerated and similar tools:  "intent feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle." (§ 466.)  One can scour the entire Penal Code and only find this distinctive phrase in section 466.  The People posit the state of mind required by section 466 is an intent to use the tool possessed for the commission of any theft or other felony inside a building — the same intent required in the burglary statute, section 459.  This inference is somewhat plausible given certain similarities between section 466 and section 459.  At common law, burglary was defined as a breaking and entering into a dwelling of another in the nighttime with the intent to commit a felony.  (See *People v. Sparks* (2002) 28 Cal.4th 71, 78.)  The element of breaking was eliminated from the crime of burglary when it was first codified in the 1850 Act concerning Crimes and Punishments (Stats. 1850, ch. 99, § 58, p. 235) and the Legislature subsequently amended the burglary statute in 1858 to include entry with "intent to commit grand or petit larceny or any felony" as an alternative to a *forcible* breaking and entering.  (Former § 58 as amended by Stats. 1858, ch. 245, § 1, p. 206; see *People v. Garcia* (2016) 62 Cal.4th 1116, 1131.)  Enacted in 1872 along with section 459, section 466 refers to an "intent feloniously to break or enter" — language reminiscent of the common law elements of burglary.  And section 466 incorporates "[a]ny of the structures mentioned in Section 459" into its definition of a building.

Yet a closer look at section 466 supports the conclusion that a narrower intent standard is most consistent with the ultimate legislative purpose associated with this statute.  Unlike certain burglary tool statutes found in other states,

section 466 does not merely prohibit possession of certain devices with an intent to commit burglary or theft (see, e.g., Va. Code Ann. § 18.2-94 [prohibiting the possession of "any tools, implements or outfit, with intent to commit burglary, robbery, or larceny . . . ."]), nor does it reference the use of tools to commit theft, rather than breaking or entering. (Compare Pen. Code, § 466 with Colo. Rev. Stat. § 18-4-205(1) ["A person commits possession of burglary tools if he possesses any explosive, tool, instrument, or other article adapted, designed, or commonly used for committing or facilitating the commission of an offense involving forcible entry into premises or theft by a physical taking . . . ."].)

What section 466 includes instead is an intent requirement focused specifically on commission of a felonious breaking or entry. Coupled with the statute's list of tools that seem primarily capable of facilitating entry despite someone's effort to secure or limit access to a structure or other location referenced in the statute, the mention of breaking or entering in the context of section 466 seems most consistent with a reading that conditions criminal liability on a particular state of mind — intent to use an "instrument or tool" to break or otherwise effectuate physical entry into a structure in order to commit theft or some other felony within the structure.

Whatever else the record establishes about H.W.'s actions at the Sears store on the day that set this case in motion, it does not support the conclusion that H.W. intended to use the pliers to do anything other than remove the anti-theft tag from the jeans. H.W. admits he entered the Sears store "with the intent to commit larceny" and "used pliers to effectuate a petty theft." There is insufficient evidence here to support the section 466 allegation that H.W. possessed the pliers with "intent

feloniously to break or enter into any building, railroad car, aircraft, or vessel, trailer coach, or vehicle."  (§ 466.)

### III.

Penal Code section 466 prohibits possession of certain enumerated objects and other instruments or tools with "intent feloniously to break or enter."  Even if we assume the pliers in H.W.'s possession indeed qualify as an "other instrument or tool," what H.W. lacked is the intent required to establish criminal liability under section 466 given what we can discern from its words and structure.  Instead, criminal liability for possession of prohibited tools "with intent feloniously to break or enter" requires a showing that the defendant intended to use the instrument or tool possessed to break or effectuate physical entry into a structure in order to commit theft or a felony within the structure.  The record here does not support the conclusion that H.W. possessed the pliers with an intent to use them for any purpose other than to remove the anti-security tag from the jeans.  The judgment of the Court of Appeal is reversed.

**CUÉLLAR, J.**


**We Concur:**
**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re H.W.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 2 Cal.App.5th 937
**Rehearing Granted**

_____

**Opinion No.** S237415
**Date Filed:** March 28, 2019

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Stacy Boulware Eurie

_____

**Counsel:**

Robert McLaughlin, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Catherine Chatman, Rachelle A. Newcomb and F. Matt Chen, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert McLaughlin
Law Office of Robert McLaughlin
31441 Santa Margarita Parkway, Suite A-135
Rancho Santa Margarita, CA  92688
(949) 280-8022

F. Matt Chen
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 445-9555